*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  February 19, 2015                   518014
_____

In the Matter of EDWARD
    BENJAMIN,
                    Appellant,

        v                                    MEMORANDUM AND ORDER

KALYNN LEMASTERS,
                    Respondent.
_____

Calendar Date:   January 15, 2015

Before:  Lahtinen, J.P., Garry, Devine and Clark, JJ.

_____

        Emily Karr Cook, Elmira, for appellant.

        Pamela Bleiwas, Ithaca, for respondent.

        Pamela D. Gee, Elmira, attorney for the child.

_____

Garry, J.

        Appeal from an order of the Family Court of Chemung County
(Keene, J.), entered November 18, 2013, which, among other
things, dismissed petitioner's application, in a proceeding
pursuant to Family Ct Act article 6, for custody of the parties'
child.

        Petitioner (hereinafter the father) and respondent
(hereinafter the mother) are the unmarried parents of a child
(born in 2009).  The mother resides in Michigan and also has an
older child and two younger children with other fathers.  The
father resides in New York.  The mother was 15 years of age and
residing in Michigan and the father was approximately two years
older when the parties began an online acquaintance in 2007.

Approximately one year later, the father moved to Michigan and began residing there with the mother, in her mother's home. The parties thereafter had an unstable relationship, separating and reconciling several times, moving frequently, and residing with various friends or relatives, either separately or together, in four different states, including New York and Michigan. In December 2011, during a period when the parties were living together in Michigan, the father ended the relationship and moved to the City of Elmira, Chemung County, taking the child with him. He asserts that he did so pursuant to the parties' agreement that he would take custody of the child; the mother claims that the trip was intended to be a temporary visit, with the understanding that the child would be returned to Michigan after two weeks. In September 2012, the mother told the father that she wished to reconcile with him. He traveled to Michigan, picked up the mother and her other children, and brought them to Elmira. After several days, without notice to the father, the mother returned to Michigan with the children, including the subject child. She later testified that her claim about reconciling with the father had been a ruse, and that her true intent had been to retrieve the child.

The father commenced this custody proceeding in September 2012 and was granted temporary custody of the child, who was returned to New York in February 2013. Following a fact-finding hearing, Family Court awarded sole legal and physical custody of the child to the mother and scheduled parenting time with the father. The father appeals.

The paramount consideration in an initial custody proceeding is the child's best interests, taking into consideration such factors as the parents' past performance, relative fitness, willingness to foster the child's relationship with the other parent and ability to maintain a stable home and provide for the child's overall well-being (see Matter of DiMele v Hosie, 118 AD3d 1176, 1177 [2014]; Matter of Keen v Stephens, 114 AD3d 1029, 1030 [2014]; Matter of Melissa WW. v Conley XX., 88 AD3d 1199, 1200 [2011], lv denied 18 NY3d 803 [2012]). Initially, we find a sound and substantial basis in the record for Family Court's determination that joint custody was not feasible, based upon the parties' mutual history of blocking one

another's access to the child and their testimony that they have difficulty communicating about the child and often misunderstand or misinterpret one another in attempting to reach agreements about her (see Bowman v Engelhart, 112 AD3d 1187, 1188 [2013]; Jeannemarie O. v Richard P., 94 AD3d 1346, 1347 [2012]).

As for the award of legal and physical custody to the mother, the record reveals that both parents love the child, both have parental strengths, and both also have significant weaknesses, including their youth, unstable history and lack of education. The mother was 21 years of age at the time of the fact-finding hearing, the father was 23 years of age, and both had dropped out of high school before graduating. In the father's favor, he had been working steadily for the same employer for two years at the time of the hearing, was current with his bills, and testified that he had sufficient income, augmented by food stamps, to provide for the child's needs. He resided in a two-bedroom apartment where the child had her own room, and lived near several relatives, including cousins with whom the child often socialized and an aunt who babysat for the child when he was at work. He was enrolled in GED classes with the goal of obtaining his high school diploma and attending college.

The parties offered conflicting testimony that raised concerns relative to the father's emotional stability, however, including allegations of medication overdoses, violent and angry outbursts and threats of violence with use of weapons against the mother. Although the father's attorney argues upon appeal that this testimony should be disregarded, we note that Family Court credited the mother's account, finding that the father had exhibited controlling and violent behavior toward the mother and had threatened, intimidated and manipulated her. This Court defers to such factual determinations and credibility assessments (see Matter of Lopez v Robinson, 25 AD3d 1034, 1035-1036 [2006]).

At the time of the hearing, the mother was residing with her other children and her fiancé — whom she reportedly married shortly after the hearing — in a leased three-bedroom home with a fenced backyard. The fiancé was employed at a factory, earning a sufficient income to permit the mother to stay at home caring for

the children.  Several members of the mother's extended family lived nearby, including her mother, sister and grandmother.  She described the structured schedule that the child would follow if placed in her custody and stated that she regularly provided her children with educational activities to prepare them for school.

The testimony of both parties supports Family Court's determination that the mother had been the child's primary caretaker during most of her early life.  As for fostering the other parent's relationship with the child, both parties described incidents in which the other parent had cut off access to the child by refusing to provide contact information or permit visits or telephone calls.  However, the mother testified at the hearing that she wanted the child to have a good relationship with both parents and, if granted custody of the child, would permit the father to talk with the child every day, send him pictures and maintain a good relationship with him.  The father, by contrast, testified that he would be reluctant to allow the mother to have unsupervised visits with the child because he distrusted her and feared that she might take the child away from him.

The father's primary contention on appeal is that Family Court's finding that the mother's testimony was more credible overall than his lacks a sound and substantial basis in the record.  The father points to the mother's acknowledgment that she deceived the father about her wish to reconcile with him in order to regain custody of the child, and then deceived him again by removing the child to Michigan without informing him.  The mother, however, was frank in admitting that she had deceived the father, testifying that she had done so because she did not understand the law, missed the child and believed that this was the only way to regain contact with her.  The court did not directly address this aspect of the mother's behavior, but — with regard to her failure to maintain contact with the child following the father's move to New York — found that the mother's failure to seek custody of the child by legal means resulted from her youth and inexperience and the father's misconduct in keeping the child from her rather than lack of love or concern for the child.  As previously noted, this Court defers to such factual determinations and assessments of credibility by Family Court.

The father further argues that Family Court erred in failing to consider the position of the attorney for the child that it would be in the child's best interests to award physical custody to the father. Although the position of the attorney for the child is a factor to be considered in determining a child's best interests, it is not determinative (see Matter of DiMele v Hosie, 118 AD3d at 1178-1179; Matter of Graham v Graham, 24 AD3d 1051, 1054 [2005], lv denied 6 NY3d 711 [2006]). Here, the trial attorney for the child explained that his position was based primarily upon the mother's failure to visit the child, communicate with her or petition for custody after the father took her to New York. The court, however, credited the mother's testimony that she attempted unsuccessfully to get the child back by, among other things, contacting police, and, as previously noted, found her to be devoted to the child. Subsequently, the appellate attorney for the child advocated in favor of the court's custody award. Considering the record as a whole, and noting that the child's placement in Michigan avoids separating her from her half siblings (see Matter of Ebert v Ebert, 38 NY2d 700, 704 [1976]), we find no basis for disturbing the custody award.

Finally, the father challenges Family Court's award of parenting time to him on alternate weekends in Michigan, arguing that he will be deprived of contact with the child as he cannot travel to Michigan given the distance involved and his limited financial resources. However, the court attempted to minimize the harmful impact of these factors by also allowing unrestricted telephone contact and scheduling parenting time with the father in New York during holiday breaks and for a full month in the summer (see Matter of Schneider v Lascher, 72 AD3d 1417, 1418 [2010], lv denied 15 NY3d 708 [2010]). The child's youth weighs against transporting her to New York for short visits, and the father has demonstrated through past travel that he is able to make trips to Michigan when necessary for the child's benefit. The court noted that it may be feasible for the father to move to Michigan to be closer to the child, given his unmarried status and the "transplantable" nature of his job skills as a taxi driver (Thompson v Smith, 277 AD2d 520, 522 [2000]; compare Matter of Tropea v Tropea, 87 NY2d 727, 740 [1996]). For these reasons, we find the parenting time schedule to be supported by a

sound and substantial basis in the record (see Matter of McLean v Bell, 35 AD3d 744, 744-745 [2006]).

Lahtinen, J.P., Devine and Clark, JJ., concur.

ORDERED that the order is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court