*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 17, 2015          519869
_____

In the Matter of LILLY NN.,
                    Respondent,

     v                                    MEMORANDUM AND ORDER

JERRY OO.,
                    Appellant.

(And Three Other Related Proceedings.)
_____


Calendar Date:  October 15, 2015

Before:  Garry, J.P., Egan Jr., Rose and Clark, JJ.

                    _____


        Monique B. McBride, Albany, for appellant.

        Cowen Law Firm, Sidney (Sarah E. Cowen of counsel), for
respondent.

        Susan B. McNeil, Ithaca, attorney for the children.


                    _____


Clark, J.

        Appeal from an order of the Family Court of Delaware County
(Becker, J.), entered September 18, 2014, which granted
petitioner's application, in a proceeding pursuant to Family Ct
Act article 6, for custody of the parties' children.

        Petitioner (hereinafter the mother) and respondent
(hereinafter the father) are the unmarried parents of two sons
(born in 2002 and 2004).  The mother owns and operates a
restaurant and employed the father during their 12-year
relationship, which ended in 2013.  At that time, the father
moved out of the family residence and found new employment.

In March 2013, the mother commenced the first of the instant proceedings seeking an order of custody, and, in May 2013, Family Court issued a temporary order of custody and visitation, granting joint legal custody, with residential custody to the mother and parenting time to the father "as the parties may agree."  The father subsequently filed a petition seeking enforcement of the temporary order, alleging that the mother was not allowing him access to the children and that the children were being neglected.  The mother in turn filed a petition seeking sole custody and alleged the father's new home was unfit for the children.[1]  Finally, the father filed a petition for modification of the temporary order, as well as a petition seeking full custody.

Over the summer of 2013, the temporary order was revised twice, the first revision was at the prompting of the attorney for the children who communicated the children's wishes to spend more time with their father.  Following court-ordered home studies, drug testing, mental health and substance abuse evaluations and a multi-day trial, Family Court awarded sole legal custody of the children to the mother and visitation to the father.  The father now appeals.

A court's primary concern in an initial custody determination is the best interests of the children (see Eschbach v Eschbach, 56 NY2d 167, 171 [1982]; Matter of Kayla Y. v Peter Z., 125 AD3d 1126, 1127 [2015]).  This determination is made "by reviewing such factors as maintaining stability for the child[ren], the child[ren's] wishes, the home environment with each parent, each parent's past performance, relative fitness, ability to guide and provide for the child[ren's] overall well-being, and the willingness of each parent to foster a relationship with the other parent" (Matter of Jolynn W. v Vincent X., 85 AD3d 1217, 1217 [2011], lv denied 17 NY3d 713 [2011] [internal quotation marks and citations omitted]; see

---

[1]  The mother also filed a family offense petition alleging that the father harassed her at her business.  However, no testimony was offered at trial to support this petition and it was dismissed.

Matter of Kayla Y. v Peter Z., 125 AD3d at 1127). "Given Family Court's superior ability to observe and assess the witnesses' testimony and demeanor firsthand, its factual findings and credibility determinations — if supported by sound and substantial evidence — will not be disturbed" (Matter of DiMele v Hosie, 118 AD3d 1176, 1177 [2014] [citations omitted]).

At the fact-finding hearing, the parties both testified to a history of co-parenting their children. The father regularly fed the children, helped them with their schoolwork, communicated with the children's teachers, took them to medical appointments and cared for them in their daily needs. The mother provided shelter and insurance for the children and regularly picked the children up from their after-school program, took them to her restaurant and fed them dinner. Furthermore, the court-ordered evaluations indicated that both parents were fit and could provide safe and appropriate homes for the children. Drug testing of each of the parties revealed negative results for the father and a result for the mother that aligned with her prescribed medication. The father's substance abuse evaluation indicated no substance abuse and no treatment was recommended. Moreover, the court-ordered mental health evaluation described both parents as "possess[ing] positive parental attributes from which their children can benefit" and observed that their difficulties did not seem to be "negatively impacting each party's parenting abilities or capacity to co-parent." Both evaluations recommended a joint custodial arrangement.

Family Court's primary focus was on certain emotional and academic issues concerning the older child. Specifically, in January 2014, the older child was involved in an incident in which he, while unsupervised at his mother's home, shot another child with a pellet gun, causing injury. Additionally, the older child had a history of aggression toward animals, which the mother attributed to the father taking the children hunting and trapping at a young age. However, at the time of trial, the father had refrained from taking the children trapping for a period of at least two years in an effort to comply with an earlier recommendation from child protective services. As a result of the January 2014 incident, the mother was the subject of an investigation by child protective services that was

"indicated" and the child was placed on probation and began counseling.  At the time of trial, the child had attended eight therapy sessions, all of which the mother had attended and none of which the father had attended.  While crediting the father's testimony that he had made an effort to become more involved in the child's counseling, Family Court found his level of effort to be inadequate and determined that the mother was the parent more capable to deal with the behaviors of the older child to the extent that she expressed more concern and was the one to arrange and attend counseling with the older child.  On this point, we disagree.

In our view, it is significant that the most alarming incidents of concerning behavior on the part of the older child occurred at the mother's house when the child was using a gun unsupervised.  The mother, who had no training in gun use and testified to having misgivings about whether use of the pellet gun should be allowed at all, nonetheless left the child unsupervised with the weapon.[2]  Conversely, the father — who admittedly desires to raise his children in the hunting and trapping "way of life," teaching them to raise animals for food — does not permit his children to use guns unsupervised and attempts to educate them in safety and proper usage.  Also of importance is the father's testimony that he would consider refraining from hunting with his older child if advised by a professional to do so.  In this regard, we see the mother's conduct with respect to the father's attendance at counseling to be somewhat exclusionary to the extent that she did not immediately inform the father that the child was starting counseling and initially told the father that he could not attend unless he paid for a portion of the session.

We likewise disagree with Family Court's assessment that the mother was in a better position to support the children academically because of her proximity to the children's school.  Rather, the record shows that, like the mother, the father spends time on a regular basis helping with homework, understands his

---

[2]  The pellet gun in question was given to the child by a friend of the mother.

own strengths and weaknesses as a tutor, on a practical level knows the workflow of assignments and communicates sufficiently with the guidance counselor and the older child's primary teacher.

Additionally, we find error in Family Court's determination to not consider the wishes of the children. In this regard, Family Court found that both parents had attempted to improperly influence their children's wishes regarding custody, thereby "cancelling out" the children's preferences. While there is a basis in the record to show that the mother attempted to influence the children, there is no testimony that demonstrates a similar attempt by the father. Thus, in light of the children's "ability to articulate [their] preferences as reflected in the Lincoln hearing[3] transcript," at minimum, the unequivocal expression of preferences are "'entitled to consideration'" (Matter of Rivera v LaSalle, 84 AD3d 1436, 1439 [2011], quoting Matter of Lowe v O'Brien, 81 AD3d 1093, 1096 [2011], lv denied 16 NY3d 713 [2011]).

Thus, considering the record before us as a whole, we find Family Court's award of sole custody to the mother to be without a sound and substantial basis. Acknowledging that the mother had difficulty recognizing that the children are entitled to have a meaningful relationship with their father – a factor which Family Court did not expressly evaluate – upon this record, we do not find that the parties' history was such that joint custody was inappropriate (compare Matter of Brown v Akatsu, 125 AD3d 1163, 1165-1166 [2015]; Matter of Koch v Koch, 121 AD3d 1201, 1201-1203 [2014]; Matter of DiMele v Hosie, 118 AD3d at 1177-1178; Fiacco v Fiacco, 93 AD3d 1095, 1096-1097 [2012]). Despite the mother's obvious dislike for the father, throughout the rather lengthy

---

[3]  Family Court violated the confidences of the children made during their Lincoln hearing (see Matter of Verry v Verry, 63 AD3d 1228, 1229 [2009], lv denied 13 NY3d 707 [2009]). While there is little question that the court's disclosures were improper, we do not find them to be an independent basis to disturb the custody determination (see Matter of Rivera v LaSalle, 84 AD3d 1436, 1437 [2011]).

duration of these proceedings, the parties fairly successfully maintained joint custody of the children who, by all accounts, enjoyed spending substantial time with both of their parents. Both homes were found to be safe and adequate, the concerns over drug or alcohol abuse were unfounded, the children were provided for by both parents and the father openly expressed the importance of acting in the best interests of the children and encouraging their relationships with their mother. Thus, we find no basis in the record to conclude that the temporary arrangement awarding the parties joint legal custody should not be made permanent. Although not binding upon Family Court (see Matter of Benjamin v Lemasters, 125 AD3d 1144, 1147 [2015]; Robert B. v Linda B., 119 AD3d 1006, 1009 [2014], lv denied 24 NY3d 906 [2014]), in light of the foregoing, we note that the recommendations of joint custody in both court-ordered evaluations seem especially significant.

Accordingly, we reverse the order of Family Court to the extent that it granted sole legal custody to the mother and award the parties joint legal custody of the children with primary physical custody to the mother.[4] We also find it is in the best interests of the children to expand the father's parenting time. First, the father's weekends should be expanded to include Sunday evening and Monday until the beginning of the school day. The father is responsible for getting the children to school on Monday mornings. Second, with respect to summer vacation, the father is awarded two weeks of uninterrupted parenting time – taken either separately or consecutively – and he shall provide written notice to the mother 30 days prior to the vacation. No notice to Family Court is necessary. Nor is it necessary for the father to refrain from working during that time. All of the other provisions of the September 12, 2014 custodial order shall remain in effect.

Any remaining contentions, to the extent not specifically addressed herein, have been considered and found to be without merit.

---

[4] We note that the attorney for the children now argues in favor of an award of sole legal custody to the father.

Garry, J.P., Egan Jr. and Rose, JJ., concur.


ORDERED that the order is modified, on the law and the facts, without costs, by reversing so much thereof as awarded sole legal custody of the children to petitioner; the parties are awarded joint legal custody with primary physical custody to petitioner and respondent's parenting time with the children is adjusted as set forth in this Court's decision; and, as so modified, affirmed.


ENTER:

Robert D. Mayberger
Clerk of the Court