*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: May 5, 2016        520462
_____

In the Matter of STEPHEN G.,
          Appellant,

    v
                                 MEMORANDUM AND ORDER

LARA H.,
          Respondent.

(And Three Other Related Proceedings.)
_____

Calendar Date: March 23, 2016

Before: Peters, P.J., Lahtinen, Rose, Lynch and Aarons, JJ.

_____

     Gordon, Tepper & DeCoursey, LLP, Glenville (Jennifer P. Rutkey), for appellant.

     David Brickman, Albany, for respondent.

     Mark A. Kassner, Glenville, attorney for the children.

_____

Aarons, J.

     Appeal from an order of the Family Court of Montgomery County (Cortese, J.), entered January 22, 2015, which, among other things, partially granted respondent's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

     Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of two daughters (born in 2004 and 2007). Pursuant to a May 2010 order, the parties had joint legal custody and shared physical custody of the children. The order provided a two-week rotation for parenting time. In

week one, the father would pick up the children on Wednesday at 2:30 p.m. and return them to the mother on Saturday at 5:00 p.m. In week two, the father would pick up the children on Thursday at 8:00 a.m. and return them to the mother on Saturday at 5:00 p.m. The parties' June 2012 judgment of divorce incorporated the order without merger. Subsequently, a March 2013 order entered on consent in satisfaction of three petitions, including a family offense petition, continued the joint legal custody award and parenting time schedule of the May 2010 order and granted the parties the right to refile a petition for modification after six months without showing a change in circumstances.

In September 2013, the father commenced two proceedings — a violation petition and a modification petition — seeking sole legal custody of the children and an increase in parenting time, such that he would have the children from Tuesday at 8:00 a.m. to Saturday at 5:00 p.m. every week. The mother cross-petitioned to enforce the May 2010 custody order and to modify it by giving her sole legal custody and reducing the father's parenting time. Following a 12-day trial, Family Court dismissed the father's petitions and the mother's cross petition for enforcement and partially granted the mother's cross petition for custody modification by awarding her sole legal custody and continuing the existing parenting schedule.[1] The father now appeals.

"The primary concern in any custody matter is, of course, the best interests of the children and, to that end, Family Court must give due consideration to, among other things, each parent's ability to furnish and maintain a suitable and stable home environment for the children, past performance, relative fitness, ability to guide and provide for the children's overall well-being and willingness to foster a positive relationship between the children and the other parent" (Matter of Darrow v

_____

   [1] We note that, as the March 2013 order provided that either party could petition to seek a modification of custody without demonstrating a change in circumstances, Family Court properly proceeded to a best interests analysis without making a determination in that regard (see Matter of Andrea CC. v Eric DD., 132 AD3d 1028, 1029 [2015]).

Darrow, 106 AD3d 1388, 1390 [2013] [internal quotation marks, brackets and citations omitted]; accord Matter of Palmatier v Carman, 125 AD3d 1139, 1140 [2015]; see Matter of Jolynn W. v Vincent X., 85 AD3d 1217, 1217 [2011], lv denied 17 NY3d 713 [2011]). Joint legal custody "is an aspirational goal in every custody matter," but such an award is "not feasible where . . . the parties' relationship and history evidences an inability to work and communicate with one another in a cooperative fashion" (Matter of Darrow v Darrow, 106 AD3d at 1391 [internal quotation marks and citation omitted]; see Matter of DiMele v Hosie, 118 AD3d 1176, 1177-1178 [2014]; Matter of Jolynn W. v Vincent X., 85 AD3d at 1217). Although not determinative, the expressed wishes of the children are "some indication of what is in [their] best interests," considering their age, maturity and potential to be influenced (Eschbach v Eschbach, 56 NY2d 167, 173 [1982]; see Matter of Rivera v LaSalle, 84 AD3d 1436, 1438 [2011]; Matter of Carballeira v Shumway, 273 AD2d 753, 755 [2000], lv denied 95 NY2d 764 [2000]). Finally, "[g]iven Family Court's superior ability to observe and assess the witnesses' testimony and demeanor firsthand, its factual findings and credibility determinations — if supported by sound and substantial evidence — will not be disturbed" (Matter of Lilly NN. v Jerry OO., 134 AD3d 1312, 1313 [2015] [internal quotation marks and citation omitted]; see Matter of Daniel TT. v Diana TT., 127 AD3d 1514, 1515 [2015]; Matter of Koch v Koch, 121 AD3d 1201, 1202 [2014]).

The father is a paramedic for an ambulance service. He works two 24-hour shifts on Saturday from 6:00 p.m. to Sunday at 6:00 p.m., and on Monday from 7:00 a.m. to Tuesday at 7:00 a.m. Additionally, the father has two three-hour meetings per month on Wednesday and Friday mornings and can work up to 12 more hours per week doing administrative duties from home. During the course of the trial, the father was in the process of moving in with his then-paramour, an emergency room physician.[2] She has two children of her own, the custody of whom she shares with their father. The subject children have their own room in the home. The mother is a veterinarian that has been employed at the same animal hospital for 10 years. Her hours are 8:00 a.m. to

_____

[2] The father advises this Court that they are now married.

2:00 p.m. Monday through Thursday, noon to 11:00 p.m. on Friday, and 8:00 a.m. to 5:00 p.m. on Saturday. She conceded that the schedule was subject to change depending on the availability of the other veterinarians. She lives in a home that she has owned for 12 years with her fiancé, a professor at a college who teaches class remotely. The children have a room in the mother's house.

There have been five investigations by Child Protective Services (hereinafter CPS) in relation to the parents. Although one investigation caused the father to be separated from the children for a period of six months, none has led to a finding of abuse or neglect by a court. The investigations are a source of resentment between the parties and evidence their contentious relationship, but we are unable to conclude on the record before us that the content of the allegations reflects on the ability of either parent to care for the children.

Family Court accepted into evidence the court-ordered report of Elizabeth Schockmel, a clinical/forensic psychologist, and was authorized to consider and credit her opinion as part of a best interests analysis (see Robert B. v Linda B., 119 AD3d 1006, 1008 [2014], lv denied 24 NY3d 906 [2014]; Matter of Arieda v Arieda-Walek, 74 AD3d 1432, 1434 [2010]; see generally Matter of Greene v Robarge, 104 AD3d 1073, 1074-1075 [2013]). Schockmel opined that the mother "views [the father] as an irresponsible father to [the children], and . . . feels it is appropriate that he be marginalized in their lives." She offered that the mother seemed "so invested in maintaining control (i.e., 'winning' the court case), she is willing to cite as proof of the validity of her concerns the CPS [investigations]" and the hearings held thereon. Schockmel continued that the mother "does not appear attuned to the fact that she is contributing to the stress [that the older child] — and perhaps [the younger child] as well — is experiencing around family concerns." She further opined that, with regard to the mother's fiancé, "it seems she has found a partner who actively supports her efforts to minimize the involvement [that the father] has in her life and the lives of the children." With respect to the father, Schockmel concluded that he "has lasting trauma — and anger — secondary to the effort by [the mother] and [CPS] to identify him as a neglectful

parent."

Although Family Court was not required to adopt Schockmel's opinions (see Robert B. v Linda B., 119 AD3d at 1008; Matter of Maliha v Maliha, 13 AD3d 1032, 1033-1034 [2004]), we are troubled that it did not address her conclusions without offering any explanation as to why it found them to be lacking in credibility or otherwise contradicted by the record (see Ekstra v Ekstra, 78 AD3d 990, 991 [2010]; Matter of Volpe v Volpe, 61 AD3d 691, 692 [2009]).  Instead, Family Court focused extensively on the father's perceived shortcomings, citing in great detail events that occurred years before the children were born and, in the court's view, caused the parties' marital strife.  Even assuming that the father was the source of the parties' marital problems, there was no evidence to link any lapses in his past role as a spouse to the mother with his current ability to parent the children.  Thus, we find that the award of sole legal custody to the mother lacked a sound and substantial basis in the record.

Indeed, there was substantial trial testimony that pointed to the father's devotion to the children and that he is a good and loving parent.  Likewise, there was substantial trial testimony establishing that the mother, too, is similarly good and loving to the children.  Hence, considering the position of the attorney for the children that the parties should have joint custody, that the parents have managed to stick to a custody schedule of their own design for several years and Schockmel's opinion that they are both highly capable of parenting the children, we are convinced that there is a "modicum of communication and cooperation" such that joint legal custody is in the best interests of the children (Matter of Blanchard v Blanchard, 304 AD2d 1048, 1049 [2003]; see Matter of Lilly NN. v Jerry OO., 134 AD3d at 1315-1316).

As for the parenting schedule, we similarly find that it lacks a sound and substantial basis in the record.  Both parents have maintained stable homes and have demonstrated their devotion to the children's upbringing.  The attorney for the children asserts that the parents should have equal parenting time and

that the children support that result.[3]  The mother's only
objection to allowing the father additional parenting time during
the week was her fear that it would cause the children to have
problems turning in homework assignments on time.  However, the
allegation that the father had problems helping the children with
homework was not corroborated by the children's teachers.  As
such, we are convinced that an award of parenting time that is as
equal as possible is in the children's best interests (see Matter
of Lilly NN. v Jerry OO., 134 AD3d at 1316; Matter of Daniel TT.
v Diana TT., 127 AD3d at 1515; Matter of Koch v Koch, 121 AD3d at
1202; Matter of Felty v Felty, 108 AD3d 705, 709 [2013]).

In adjusting the parenting time to apportion it in a manner
that is as equal as possible under the circumstances (see Matter
of Schneider v Lascher, 72 AD3d 1417, 1418-1419 [2010], lv denied
15 NY3d 708 [2010]; compare Helm v Helm, 92 AD3d 1164, 1166-1167
[2012]), the parties shall follow a two-week schedule.  In week
one, the father shall pick the children up after school on
Wednesday.  If the children do not have school, the father shall
pick the children up at 8:00 a.m., unless the mother is off from
work on such day, in which case the father shall pick the
children up at 5:00 p.m.  The father shall keep the children
until Saturday at 5:00 p.m., when he shall return them to the
mother's home.  In week two, the schedule will be the same as
week one except that the father shall pick the children up on

_____

[3]  No Lincoln hearing was held and none was requested.  The
attorney for the children informed this Court during oral
argument that he opted not to request one, as the children's
wishes were largely uncontested and a Lincoln hearing would have
added to the stress of the situation for the children.  Although
it is generally the better practice to hold a Lincoln hearing, it
is not mandatory, particularly where, as here, the children's
wishes are already known and are not in dispute (see Matter of
Gerber v Gerber, 133 AD3d 1133, 1135 n 6 [2015], lv denied 27
NY3d 902 [2016]; Matter of Battin v Battin, 130 AD3d 1265, 1266
[2015]; Matter of Casarotti v Casarotti, 107 AD3d 1336, 1338-1339
[2013], lv denied 22 NY3d 852 [2013]).

Tuesday instead of Wednesday.

Peters, P.J., Lahtinen, Rose and Lynch, JJ., concur.


ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as awarded sole legal custody of the children to respondent and set regularly scheduled parenting time; petitioner and respondent are awarded joint legal custody, and the regularly scheduled parenting time is adjusted as set forth in this Court's decision; and, as so modified, affirmed.


ENTER:

Robert D. Mayberger
Clerk of the Court