Matter of Cramer v Cramer (2018 NY Slip Op 04989)





Matter of Cramer v Cramer


2018 NY Slip Op 04989


Decided on July 5, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 5, 2018

524304

[*1]In the Matter of WENDY CRAMER, Appellant,
v
ASHLEY CRAMER et al., Respondents, and GREGORY BARCOMB, Respondent. (Proceeding No. 1.) (And Three Other Related Proceedings.)
In the Matter of WENDY CRAMER, Appellant,
v
ASHLEY CRAMER, Respondent, and GREGORY BARCOMB, Respondent. (Proceeding No. 2.) (And Two Other Related Proceedings.)

Calendar Date: June 5, 2018

Before: Garry, P.J., Egan Jr., Aarons, Rumsey and Pritzker, JJ.


Coughlin & Gerhart LLP, Ithaca (Dirk A. Galbraith of counsel), for appellant.
Samantha E. Koolen, Albany, for Gregory Barcomb, respondent.
Susan B. McNeil, Ithaca, attorney for the children.



MEMORANDUM AND ORDER
Egan Jr., J.
Appeal from an order of the Family Court of Chemung County (Tarantelli, J.), entered November 18, 2016, which, among other things, dismissed petitioner's applications, in two proceedings pursuant to Family Ct Act article 6, for custody of the subject children.
Respondent Ashley Cramer (hereinafter the mother) is the mother of two children (born in 2007 and 2011). Respondent Erik Whedon (hereinafter the older child's father) is the father of the older child and respondent Gregory Barcomb (hereinafter the younger child's father) is the father of the younger child. Petitioner (hereinafter the grandmother) is the maternal grandmother of both children. In October 2015, the grandmother filed petitions seeking custody of the children due to, among other things, her concern over the children's safety and well-being based upon the continued drug use of both the mother, who was then living in a halfway house, and the younger child's father, who was then admitted to an inpatient rehabilitation program. Following a fact-finding hearing and Lincoln hearings with each child, Family Court determined that, although the grandmother sufficiently established extraordinary circumstances, it was nevertheless in the best interests of the children for the mother and the younger child's father to continue sharing joint legal custody of the children, with primary physical custody to the younger child's father, and scheduled visitation for the grandmother and the older child's father [FN1]. The grandmother now appeals and we affirm.[FN2]
It is well-settled that "[a] parent has a claim of custody to his or her child that is superior [*2]to that of all others in the absence of 'surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances'" (Matter of Perry v Perry, 160 AD3d 1144, 1144-1145 [2018], quoting Matter of Bennett v Jeffreys, 40 NY2d 543, 544 [1976]; see Matter of Gardner v Gardner, 69 AD3d 1243, 1245 [2010]). A grandparent seeking custody of his or her grandchildren bears the burden to establish extraordinary circumstances and, if established, it is then incumbent upon Family Court to consider whether such an award of custody is in the children's best interests (see Domestic Relations Law § 72 [2]; Matter of Suarez v Williams, 26 NY3d 440, 446-447 [2015]; Matter of Wendy KK. v Jennifer KK., 160 AD3d 1059, 1059-1060 [2018]). As we agree with Family Court that the grandmother met her burden of proving extraordinary circumstances based on the long history of, and continuing treatment for, drug abuse by the mother and the younger child's father, and the fact that the older child's father was absent from the older child's life and had no meaningful relationship with her between when she was an infant and the filing of the subject petitions — a period of eight years (see Matter of Christy T. v Diana T., 156 AD3d 1159, 1160-1161 [2017]; Matter of Evelyn EE. v Ayesha FF., 143 AD3d 1120, 1124 [2016], lv denied 28 NY3d 913 [2017]; Matter of Lisa UU. v Sarah VV., 132 AD3d 1094, 1095-1096 [2015]; Matter of Sweeney v Sweeney, 127 AD3d 1259, 1260 [2015]), we turn to the grandmother's contention that the court erred in finding that it was in the children's best interests to award the mother and the younger child's father joint legal custody, with primary physical custody to the younger child's father.
In determining whether an award of custody is in the children's best interests, a court must consider such factors as "'the parties' respective abilities to provide stable homes for the child[ren], their relationships with the child[ren] and ability to guide and provide for the child[ren]'" (Matter of Christy T. v Diana T., 156 AD3d at 1161 [brackets omitted], quoting Matter of Rumpff v Schorpp, 133 AD3d 1109, 1111 [2015]). Here, it is undisputed that the mother and both fathers have struggled with substance abuse for years, have been prosecuted for criminal charges relating to their drug abuse and have participated, with varying degrees of success, in inpatient and outpatient rehabilitation programs [FN3]. However, the record indicates that the mother and the younger child's father both have loving relationships with the children and, by all accounts, are competent parents when they are sober. Indeed, they are fortunate to have had the love and support of both the maternal and paternal families on whom they have been able to rely and call upon to help care for the children during those periods when they have struggled with their addictions. In that regard, there is no question that the grandmother has played an influential role in the children's lives and has served as a steadfast and reliable resource for both the mother and the younger child's father [FN4]. Notably, despite the well-documented history of drug [*3]use by the mother and younger child's father, the record is devoid of any allegations that the children have ever been mistreated; in fact, they have been provided adequate housing, food and clothing, the older child attends elementary school where she is excelling and has developed numerous friendships, the younger child participates in Head Start, and it appears that the children have been largely shielded from any knowledge of their parents' substance abuse issues.
The younger child's father testified at the fact-finding hearing and candidly acknowledged his history of drug abuse. He explained that his most recent relapse was for an eight-week period between August and September 2015 and that, prior to that, he had been clean and sober for approximately 20 months. Following his relapse, he indicated that he informed his probation officer and immediately met with a counselor and arranged for a period of inpatient rehabilitation; it was during this time that the grandmother filed the subject petitions [FN6]. Since the October 2015 commencement of these proceedings, the children have resided with the younger child's father at the home of the paternal grandmother. The younger child's father testified that, following his successful completion of inpatient rehabilitation, he engaged in an outpatient rehabilitation program, successfully completing same in April 2016. As part of his outpatient program, he was subjected to random drug screens every 10 to 14 days, and all drug screens came back negative. In fact, the paternal grandmother testified that the younger child's father was presently as healthy as she had ever seen him as an adult. Moreover, for the past seven months, he has regularly attended Alcoholics' Anonymous meetings — often two times a day — and he has provided corroborating documentation of same. Further, he has engaged the help of a sponsor, has been active in his church community and has been voluntarily engaging the services of a therapist for the past 12 months.
The record further establishes that the younger child's father has lived with and taken care of the older child since she was 1½ years old and the younger child since her birth. He indicates that he is regularly engaged in the day-to-day routines of the children, helps them prepare for school, cooks meals and has regularly attended the older child's parent-teacher conferences and school concerts. He further indicated that, while he was presently employed [*4]doing construction "side jobs," he is also actively seeking increasingly gainful employment, was scheduled to interview for an apprenticeship in the local pipefitters' union and had recently completed a 100-hour training course to work at a nearby casino. Moreover, although he and the mother are no longer living together, the younger child's father has indicated his continued willingness to foster the children's relationships with the mother, the maternal grandparents and the older child's father, and the parties all agree that it is in the best interests of the children for the children to remain together (see generally Eschbach v Eschbach, 56 NY2d 167, 173 [1982]).[FN7]
While we certainly find troubling the October 2014 arrest of the mother and the younger child's father for possession of heroin in a vehicle in which the younger child was present, and the presence of drug paraphernalia in the apartment that they shared with the children, the record demonstrates that, since such time, both the mother and the younger child's father have actively engaged in treatment and, by all record accounts, are presently sober. Further, Family Court did not award the younger child's father custody without any safeguards or checks and balances. In recognition of the history of drug use and the potential fragility of the recent sobriety of both the mother and the younger child's father, Family Court specifically mandated that the younger child's father enroll in the Child Protective Services Preventative Services program offered by the local social services agency, and follow any recommendations provided for therein, and conditioned the mother's visitation on her maintaining sobriety. Moreover, the maternal grandparents and the older child's father were awarded monthly visitation as well as during holidays and school breaks and were also provided access to the school, medical, therapeutic and extracurricular records of the older child. Accordingly, on the record before us, we find that a sound and substantial basis in the record exists to support Family Court's determination that it is in the best interests of the children to award the mother and the younger child's father joint legal custody, with primary physical custody to the younger child's father, and we therefore discern no reason to disturb it on appeal. The grandmother's remaining contention, to the extent that it is properly before us, has been reviewed and found to be without merit (see e.g. Matter of Hoch v Wilks, 129 AD3d 1146, 1146-1147 [2015], lv denied 25 NY3d 914 [2015]; Matter of Bevins v Witherbee, 20 AD3d 718, 719 [2005]; Matter of Oscarson v Maresca, 232 AD2d 732, 733-734 [1996]).
Garry, P.J., Aarons, Rumsey and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1:Shortly after the birth of the older child, the older child's father relocated to Virginia and, thereafter, played no role in the older child's life until 2015, when he was notified of a then-pending custody petition filed by the younger child's father, which prompted him to file a petition for custody of the older child. In July 2015, Family Court, on stipulation of the parties, awarded joint legal and shared physical custody of the older child to the mother and the younger child's father, and granted certain phased-in visitation between the older child and the older child's father.

Footnote 2:Although the younger child's father filed a responsive brief, the older child's father has not filed a brief on this appeal. The mother also did not file a brief; however, she has indicated that she fully joins in the grandmother's arguments and position as set forth in the grandmother's brief. The paternal grandparents filed custody petitions; however, they are not taking part in this appeal.

Footnote 3:At the fact-finding hearing, the mother initially indicated that her preference was for her and the younger child's father to retain custody of the children; however, at a subsequent appearance, the mother changed her preference, indicating that she actually preferred that the grandmother be granted custody of the children. The older child's father likewise indicated his preference that the grandmother be granted custody of the older child. 

Footnote 4:In 2009, the grandmother was previously granted temporary custody of the older child based upon the mother's arrest for possession of crack cocaine. That custody order remained in place in 2011, when the mother and the younger child's father moved into the grandmother's home after the birth of the younger child. In 2012, the grandmother voluntarily relinquished primary physical custody of the older child to the mother, believing that she had her addiction under control.

Footnote 6:When the younger child's father checked into inpatient rehabilitation on October 19, 2015, the paternal grandmother agreed to care for the children until his completion of same. The paternal grandmother, however, had a scheduled vacation from October 29, 2015 through November 8, 2015 and, therefore, it was arranged that the grandmother would step in and care for the children for this portion of time. It was at that point that the grandmother visited the apartment where the mother and the younger child's father had been residing with the children and, finding it to be "a mess," including the presence of certain drug paraphernalia in plain view, felt obligated to file the subject custody petitions.

Footnote 7:We note that, in its order, Family Court disclosed certain information that the older child shared during the Lincoln hearing. While such disclosure does not constitute an independent basis for disturbing Family Court's order, a child's right to confidentiality during a Lincoln hearing is of paramount concern and Family Court should, in the future, ensure that what transpires during the course thereof remains confidential (see Matter of Lilly NN. v Jerry OO., 134 AD3d 1312, 1315 n 3 [2015]; Matter of Verry v Verry, 63 AD3d 1228, 1229 [2009], lv denied 13 NY3d 707 [2009]; see also Matter of Lincoln v Lincoln, 24 NY2d 270, 272—273 [1969]).