Matter of Tamika B. v Pamela C. (2020 NY Slip Op 05983)





Matter of Tamika B. v Pamela C.


2020 NY Slip Op 05983


Decided on October 22, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 22, 2020

528402

[*1]In the Matter of Tamika B., Appellant,
v
Pamela C. et al., Respondents. (And Another Related Proceeding.)

Calendar Date: September 16, 2020

Before: Garry, P.J., Egan Jr., Lynch, Mulvey and Reynolds Fitzgerald, JJ.


Michelle I. Rosien, Philmont, for appellant.
Palmer J. Pelella, Binghamton, attorney for the child.
Michelle E. Stone, Vestal, attorney for the child.



Mulvey, J.
Appeal from an order of the Family Court of Broome County (Young, J.), entered December 21, 2018, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the mother) and respondent Brandon D. (hereinafter the father) have two children in common (born in 2006 and 2008). In April 2014, when the mother was involved in an abusive relationship and facing felony criminal charges for welfare fraud and grand larceny, she requested that respondent Pamela C. (hereinafter the grandmother), the subject children's paternal grandmother, take the children to reside with her. As a result, the children went to live with the grandmother in Ohio, where the father also resided at the time. The mother entered a plea on her criminal charges, was sentenced to a period of incarceration and served part of that sentence at the Willard drug treatment program. In December 2014, while the mother was still at Willard, the mother, the father and the grandmother consented to an order whereby they shared joint legal custody of the subject children, with the grandmother having primary physical custody. The order permitted each party the right to file a petition in or after June 2015 "without demonstrating a further change in circumstances."
The mother was released to parole supervision later in December 2014. In June 2015, she filed a petition seeking primary physical custody of the children. Following a hearing, Family Court continued the children's physical placement with the grandmother and set forth a schedule of parenting time for the mother. Upon the mother's appeal, this Court reversed and remitted the matter to Family Court for an expedited hearing because that court failed to address whether extraordinary circumstances existed and, in light of the mother's then-new felony drug-related criminal charge, the record was not sufficiently developed for this Court's independent review of that threshold question (151 AD3d 1220, 1221 [2017]).
Around the same time as the remittal, the mother filed a violation petition alleging that the grandmother interfered with the mother's telephone contact with the children and was refusing to bring them to New York for a visit during July 2017. The mother unsuccessfully moved for the court's recusal. After a continued fact-finding hearing, Family Court found that extraordinary circumstances existed at the time of the filing of the subject modification petition and continued to exist, and that it was in the children's best interests to remain in the sole custody of the grandmother in Ohio and for the mother to have parenting time with the children monthly in Ohio and twice a year in New York. Further, the court dismissed the mother's violation petition, finding that, although the grandmother violated the prior order, her violation was not willful. The mother appeals.
Regarding the recusal motion, Family Court at times allowed the grandmother to speak out of turn and sometimes addressed her directly, instead of through counsel. On several occasions, however, the court stopped the grandmother and required her to moderate her behavior. According to an affidavit by the mother's counsel and a letter to Family Court, following a September 2017 appearance, the grandmother approached the bench without the court's invitation and engaged in conversation, during which she spoke with the court in familiar tones and patted his head. Although the court invited the mother's attorney to the bench and the grandmother's attorney was present, the other parties and counsel had left the courtroom. Inasmuch as the mother, the pro se father and the attorneys for the children were not present, this conversation —with less than all of the parties or their counsel — constituted an ex parte communication that the court should have terminated and refused to participate in (see 22 NYCRR 100.3 [B] [6]). Despite the court's handling of this situation, as the mother's counsel was present and wrote to all counsel conveying this conversation, and nothing of substance was discussed, the record does not disclose any prejudice to the mother. The record indicates that any adjournments granted by the court were not intended for the grandmother's tactical advantage, as her requests were supported by medical documentation (see Matter of Flanigan v Smyth, 148 AD3d 1249, 1253 [2017], lv dismissed and denied 29 NY3d 1046 [2017]). "[I]nasmuch as there was no showing of a statutory basis for disqualification (see Judiciary Law § 14) or that the court was biased or prejudiced against the mother, Family Court did not abuse its discretion in denying the mother's recusal motion" (Matter of Kanya J. v Christopher K., 175 AD3d 760, 764 [2019], lvs denied 34 NY3d 905, 906 [2019]; see Matter of Moore v Palmatier, 115 AD3d 1069, 1070 [2014]).
Family Court's custody and parenting time awards are supported by a sound and substantial basis in the record. "A parent's claim to custody of his or her children is superior to that of all others absent a showing of surrender, abandonment, persistent neglect, unfitness, an extended disruption of custody or other like extraordinary circumstances" (Matter of Mary D. v Ashley E., 158 AD3d 1022, 1023 [2018] [citation omitted]; see Matter of Suarez v Williams, 26 NY3d 440, 446 [2015]). "The extraordinary circumstances analysis must consider the cumulative effect of all issues present in a given case, including, among others, the length of time the child[ren] [have] lived with the nonparent, the quality of that relationship and the length of time the parent allowed such custody to continue without trying to assume the primary parental role" (Matter of Peters v Dugan, 141 AD3d 751, 753, [2016] [internal quotation marks and citations omitted]; see Matter of Hawkins v O'Dell, 166 AD3d 1438, 1440 [2018]). Extraordinary circumstances "can be established . . . where the . . . parent has relinquished custody of the child[ren] to a nonparent for an extended period of time and failed to utilize the opportunities to visit with the child[ren] or resume a parental role" (Matter of Bohigian v Johnson, 48 AD3d 904, 905 [2008] [citations omitted]). "The nonparent bears the heavy burden of establishing extraordinary circumstances"; if that burden is met, the court must then determine what custodial arrangement is in the children's best interests (Matter of Thompson v Bray, 148 AD3d 1364, 1365 [2017] [internal quotation marks and citations omitted]; see Matter of Hawkins v O'Dell, 166 AD3d at 1440).
In addition to previous times when the mother had handed the children over to the grandmother for extended periods, the mother asked the grandmother to take physical custody of the children in April 2014 and consented to a court order memorializing that arrangement in December 2014. The mother first attempted to regain physical custody when she filed the instant custody petition in June 2015. Family Court orders permitted the mother to visit with the children every month in Ohio, yet as of the 2018 hearing she had only exercised that option once. Although the mother argues that the trip to Ohio would cause her financial hardship, the father and the grandmother had testified that they would pay for a hotel room and half of her transportation costs for such visits. The record does not indicate that the mother ever asked them to assist her as they had offered. Despite the prior order allowing for two visits per year in New York, the mother apparently agreed to forgo her second visit in 2016. Testimony regarding phone contact was wildly contradictory, but the grandmother and her housemate — both of whom Family Court generally found credible — testified that the mother called sporadically, approximately once every three months. Only in the last few months before the final hearing had the mother begun calling the children regularly.
Testimony in late 2015 and early 2016 indicated that the mother was doing well on parole, yet she later admitted that in mid-2016 — while she was pregnant with her fifth child and still on parole — she sold heroin approximately three times, one of which led to her 2017 felony conviction. That felony drug sale occurred either while the subject children were visiting her or within a few days after the visit ended. That criminal charge and conviction required the mother to spend approximately 90 days in jail and five years on probation. While she was in jail, two of the mother's other children lived with a friend. The mother moved frequently, including three times in eight months, and admitted that her lifestyle, even since 2016, shows her instability.
The mother also testified that, prior to late 2015, she was diagnosed with ADHD, anxiety, depression and posttraumatic stress disorder and her mental health was unstable. She voluntarily engaged in counseling, but terminated it in October 2016 and began with a new counselor in mid-2017. The mother refused to take medication for her conditions, and she did not believe that the younger child needed medication to treat his similar conditions. Family Court credited testimony that while the mother was in Ohio for a visit in 2016 — at a time when she was still on parole — she drank alcohol and asked the grandmother for narcotics. Considering that the mother voluntarily relinquished custody to the grandmother in 2014 — not for the first time — for more than a year before attempting to regain custody, her mental health condition and living arrangements were unstable when she sought to regain custody, and she engaged in criminal conduct resulting in a felony conviction during the pendency of these proceedings, Family Court did not err in concluding that extraordinary circumstances exist, permitting a determination as to the children's best interests (see Matter of Karen Q. [Christina R.], 170 AD3d 1446, 1448-1449 [2019]; Matter of Marcus CC. v Erica BB., 107 AD3d 1243, 1246 [2013], appeal dismissed 22 NY3d 911 [2013]; compare Matter of Elizabeth SS. v Gracealee SS., 135 AD3d 995, 996-997 [2016]).[FN1]
At the time of Family Court's order, the children had been living with the grandmother for more than four continuous years and were well cared for by the grandmother, who engaged with their schools, tended to their medical needs and enrolled them in weekly counseling as well as extracurricular activities. The mother testified that the grandmother did not provide her the names of the children's teachers, medical providers and counselors, but the mother also testified that she did not ask the grandmother for that information because they did not get along. Although the mother testified that the grandmother did not update her on the children's educational and medical status, the mother had joint legal custody, which permitted her to obtain such information on her own; she made no effort to do so. During a 35-day visit in New York in 2016, the mother stopped giving the younger child his prescribed medication without consulting his doctor or any other medical professional. The grandmother testified that the child suffered behavioral difficulties as a result, which continued for approximately three weeks after he resumed his medication. In 2018, the mother testified that in mid-2017 she had obtained her first real long-term job, as a home health aide, and was working 12 hours per day, six days per week. While she worked, her 16-year-old child was left home alone and her two younger nonsubject children were in an after-school program or day care, where they often remained until 9:00 p.m. or later. On the other hand, the grandmother and her housemate worked opposite schedules, so at least one of them was at home almost any time the children were there. Although the grandmother was blunt, strict and sometimes said hurtful things to the mother, the grandmother testified that she wanted the mother to be a part of the children's lives and eventually have custody of them, once the mother maintained long-term stability in her own life. Considering all the circumstances, Family Court did not err in determining that it was in the children's best interests for the grandmother to have sole legal and primary physical custody.
The mother argues that the ordered parenting time — monthly in Ohio and twice each year in New York, with the mother meeting the grandmother half way at the beginning and end of the New York visits — was inappropriate in light of the mother's financial situation and essentially deprived her of time with the children. Although early testimony indicated that the mother was indigent, in her 2018 testimony she revealed that she worked 71 hours per week and was not paying any support for the two subject children. Nothing in the record indicates that the grandmother or the father had revoked their offers to pay some of the expenses associated with the mother's visits to Ohio. Thus, the record does not support the mother's argument that Family Court's order deprived her of meaningful visitation (see Matter of Benjamin v Lemasters, 125 AD3d 1144, 1147-1148 [2015]). Giving the requisite deference to Family Court's credibility determinations, there is a sound and substantial basis in the record to support Family Court's determinations regarding custody and parenting time (see Matter of Karen Q. [Christina R.], 170 AD3d at 1450; Matter of Melissa MM. v Melody NN., 169 AD3d 1280, 1283 [2019]; Matter of Sweeney v Daub-Stearns, 166 AD3d 1340, 1342 [2018]).
Family Court did not abuse its discretion in concluding that the grandmother's violation of the prior order was not willful. "The proponent of a violation petition must establish, by clear and convincing evidence, that there was a lawful court order in effect with a clear and unequivocal mandate, that the person who allegedly violated the order had actual knowledge of the order's terms, that the alleged violator's actions or failure to act defeated, impaired, impeded or prejudiced a right of the proponent and that the alleged violation was willful" (Matter of Carl KK. v Michelle JJ., 175 AD3d 1627, 1628 [2019] [citations omitted]; Matter of Eliza JJ. v Felipe KK., 173 AD3d 1285, 1286 [2019]; Matter of James XX. v Tracey YY., 146 AD3d 1036, 1037 [2017]). Whether "violations were willful distills to a credibility determination," upon which we generally defer to Family Court (Matter of Cobane v Cobane, 57 AD3d 1320, 1323 [2008], lv denied 12 NY3d 706 [2009]). We will not disturb Family Court's determination on a violation petition absent an abuse of discretion (see Matter of Jemar H. v Nevada I., 182 AD3d 805, 808 [2020]; Matter of Carl KK. v Michelle JJ., 175 AD3d at 1628; Matter of Michael M. v Makiko M., 152 AD3d 909, 910 [2017]).
The mother's violation petition alleged that the grandmother willfully violated a prior order by interfering with telephone contact and refusing to bring the children to New York for a visit in July 2017. The terms of the prior order were clear and it is undisputed that the grandmother had knowledge of them. Accepting Family Court's credibility findings, the mother failed to establish that the grandmother prevented or interfered in the mother's telephone contact with the children. As to the other allegation, the grandmother acknowledged that she refused to bring the children for a two-week unsupervised visit in July 2017, based on the mother's then-recent conviction for selling drugs and a concern for the children's safety. Family Court found that this was a violation of the prior order but, without any explanation, that it was not willful. During a July 2017 appearance, the grandmother's counsel stated that she was preparing to file an order to show cause; one was filed in August 2017 seeking to require supervision of the mother's visitation based on the mother's drug sales and related questions as to the children's safety while in her care. Although the grandmother should have filed her application before July, when the court-ordered visit was to take place, under the circumstances we do not find that Family Court abused its discretion in concluding that the grandmother's refusal to allow that visit was not a willful violation of the order (see Matter of Jemar H. v Nevada I., 182 AD3d at 808).
Garry, P.J., Egan Jr., Lynch and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The father also had a criminal history, used marihuana, allowed the grandmother to assume the parental responsibilities and did not oppose an award of custody to her.