■ In the Matter of WILLIAM I. DARROW, Respondent, v AMBER L. DARROW, Appellant. (Proceeding No. 1.) In the Matter of KIM M. HIBBARD, Respondent, v AMBER DARROW, Appellant, et al., Respondent. (Proceeding No. 2.) (And Another Related Proceeding.) [965 NYS2d 673]—

Egan Jr., J. Appeals from two decisions and two orders of the Family Court of Broome County (Pines, J.), entered November 22, 2011, which, among other things, granted petitioners' applications, in proceeding Nos. 1 and 2 pursuant to Family Ct Act article 6, for custody of the subject children.

Respondent Amber L. Darrow (hereinafter the mother) is the mother of three children—Nathaniel (born in 1998), Christian (born in 2001) and Gianna (born in 2005). Petitioner William I. Darrow (hereinafter Darrow), whom the mother married in 2006, is the father of Nathaniel and Gianna. Respondent Matthew J. Hibbard (hereinafter Hibbard) is the father of Christian, and petitioner Kim M. Hibbard (hereinafter the grandmother) is Christian's paternal grandmother. The mother and Darrow lived together with all three children until early 2010 when, in response to the mother's alleged infidelity, Darrow asked her to leave the marital residence.

The parties appear to have enjoyed a reasonably amicable relationship until late August 2010, when the Broome County Department of Social Services (hereinafter DSS) advised the mother that she was the subject of a report of suspected child abuse or maltreatment. In response, Darrow commenced proceeding No. 1 seeking custody of Nathaniel and Gianna, and Family Court (Connerton, J.) temporarily awarded the mother and Darrow joint legal custody of the children with primary physical custody to Darrow.[1] Additionally, the grandmother commenced proceeding No. 2 seeking custody of Christian, and Family Court (Brockway, J.) granted her temporary custody of the child with supervised visitation to the mother and visitation to Hibbard as outlined in a June 2004 order.[2] Shortly thereafter, Hibbard commenced proceeding No. 3 seeking sole custody of Christian. Approximately nine months later, Hibbard amended his petition and requested that he and the grandmother be granted joint custody. In the interim, DSS advised Family Court that the report against the mother would be indicated for inadequate guardianship.[3]

Following separate fact-finding and *Lincoln* hearings, Family

1. The mother thereafter filed a petition seeking modification of this temporary order.

2. Insofar as is relevant here, the June 2004 order, of which Family Court took judicial notice, awarded the mother sole custody of Christian and granted Hibbard various visitation periods, including every other weekend.

3. Following completion of an investigation pursuant to Family Ct Act § 1034 in November 2010, DSS asked that it be "taken off notice" with respect the pending custody applications. DSS further indicated that the mother's "case ha[d] been opened for services," but it is unclear what, if any, services thereafter were provided.

Court awarded sole legal and physical custody of Nathaniel and Gianna to Darrow and weekend visitation to the mother. As to Christian, Family Court found that extraordinary circumstances existed and awarded the grandmother and Hibbard joint legal custody of the child with primary physical custody to the grandmother and weekend visitation to the mother.[4] These appeals by the mother ensued.[5]

We turn first to Family Court's decision to award sole custody of Nathaniel and Gianna to Darrow. The primary concern in any custody matter is, of course, the best interests of the children and, to that end, Family Court must give due consideration to, among other things, "each parent's ability to furnish and maintain a suitable and stable home environment for the child[ren], past performance, relative fitness, ability to guide and provide for the child[ren]'s overall well-being and willingness to foster a positive relationship between the child[ren] and the other parent" (*Matter of Melissa WW. v Conley XX.*, 88 AD3d 1199, 1200 [2011], *lv denied* 18 NY3d 803 [2012]; *see Matter of Ames v Ames*, 97 AD3d 914, 914-915 [2012], *lv denied* 20 NY3d 852 [2012]; *Matter of Raynore v Raynore*, 92 AD3d 1167, 1168 [2012]). In view of Family Court's ability to observe the witnesses' testimony first hand, its credibility determinations—if supported by sound and substantial evidence in the record as a whole—will not be disturbed (*see Matter of Raynore v Raynore*, 92 AD3d at 1168; *Matter of Baker v Baker*, 82 AD3d 1462, 1462 [2011]).[6]

The mother initially contends that Nathaniel's and Gianna's interests would best be served by an award of joint custody. Al-

---

4. The visitation provisions in each order were identical, granting the mother visitation with the children on alternate Saturdays from 10:00 a.m. to 5:00 p.m., together with "such other and further visitation as to which the parties may agree."

5. To the extent that the mother appeals from both the November 2011 orders and the underlying decisions, we note that Family Court's decisions are not appealable papers (*see* CPLR 5512 [a]) and, therefore, the mother's appeals therefrom are dismissed (*see Matter of Palmer v Palmer*, 284 AD2d 612, 613 [2001]). Additionally, we observe that although Family Court held separate hearings on the respective custody applications, the court took judicial notice of the testimony offered in each proceeding.

6. We note in passing that the mother, Hibbard and Darrow appear to have an extensive history with Broome County Family Court dating back more than 10 years. The June 2004 order previously discussed (*see* note 2, *supra*) resulted in a modification of a prior custody order with respect to Christian, which testimony suggests was issued in or about 2002. The June 2004 order also contains a reference to the fact that the mother, then living with Darrow, had—at some prior undisclosed point in time—"lost custody of her son" (presumably Nathaniel) to Darrow.

though an award of joint custody "is an aspirational goal in every custody matter" (*Matter of Melissa WW. v Conley XX.*, 88 AD3d at 1200 [internal quotation marks omitted]), such an award is not feasible where, as here, the parties' relationship and history evidences an inability to work and communicate with one another in a cooperative fashion (*see Matter of Michael GG. v Melissa HH.*, 97 AD3d 993, 994-995 [2012]; *Jeannemarie O. v Richard P.*, 94 AD3d 1346, 1347 [2012]).

As for Family Court's award of sole custody to Darrow, the record reflects that Darrow continues to live in the same three-bedroom house where Nathaniel and Gianna resided for most of their lives and that each child has his or her own room. Additionally, Darrow has been employed as a refrigeration and air conditioning technician for the past 12 years, provides health insurance for the children through his employer and schedules and takes the children to their medical appointments. Although Darrow and the mother "shared" custody of the children between April 2010 and August 2010, Darrow testified that the children were with him the majority of the time and that he made efforts to coordinate visits between the children and Christian. On the other hand, the mother resided in a number of locations after moving out of the marital residence and, at the time of the hearing, was living in an apartment with a friend; the mother's name was not on the lease, she was not paying any rent and all three children would need to share the same bedroom. Additionally, the mother, who was not employed while living with Darrow, thereafter worked sporadically in a number of positions—most recently as a licensed hairdresser. Moreover, even assuming that the mother was the primary caregiver prior to her separation from Darrow, her subsequent lifestyle could fairly be characterized as unstable, chaotic and generally not conducive to effectively parenting children. On balance, and upon consideration of all the relevant factors, we are of the view that Darrow is the parent most capable of providing a safe, stable and secure home environment for the children. Accordingly, we find that Family Court's decision to award sole legal and physical custody of Nathaniel and Gianna to Darrow is supported by a sound and substantial basis in the record.

Turning to custody of Christian, "there is no question that a biological parent has a claim of custody of his or her child, superior to that of all others, in the absence of surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances. That said, the biological parent may be supplanted where he or she engages in gross misconduct or other

behavior evincing an utter indifference and irresponsibility relative to the parental role" (*Matter of Rodriguez v Delacruz-Swan*, 100 AD3d 1286, 1288 [2012] [internal quotation marks and citations omitted]; *see Matter of James NN. v Cortland County Dept. of Social Servs.*, 90 AD3d 1096, 1097-1098 [2011]; *Matter of Kowalsky v Converse*, 79 AD3d 1310, 1311 [2010]).

After the mother moved out of Darrow's home in early 2010, she lived in a series of residences, during which time she shared her living quarters with any number of men—one of whom was a former heroin user. Although the mother's multiple residences and association with questionable companions is not—standing alone—sufficient to render her an unfit parent (*see Matter of Burton v Barrett*, 104 AD3d 1084, 1086 [2013]), her various moves caused Christian to change schools twice within a short period of time,[7] and the record is replete with references to the unsafe and unsanitary conditions existing at the mother's residences—including, but not limited to, multiple broken windows, accumulated garbage and cramped living quarters littered with feces from the approximately 13 dogs and puppies that the mother then was housing. To our analysis, the level of instability existing in the mother's life, as evidenced by her sporadic employment and precarious housing situation, is indicative of the mother's overall pattern of placing her own interests and personal relationships ahead of her children—particularly with respect to Christian—and demonstrates a marked lack of parental responsibility. The record also raises serious concerns regarding the mother's temper and use of corporal punishment as a means of discipline. In short, based upon our review of the record as a whole, including the transcripts of the underlying *Lincoln* hearings, and according due deference to Family Court's credibility determinations (*see Matter of Baker v Baker*, 82 AD3d at 1462), we are satisfied that Family Court's finding of extraordinary circumstances as to the grandmother is supported by a sound and substantial basis in the record. We are equally persuaded that, in light of the extensive travel associated with Hibbard's employment,[8] it was in Christian's best interests to award joint legal custody to the

---

7. According to Hibbard, after the mother left Darrow and moved in with another man, she removed Christian from his original school and placed him in another school in a different school district. Two months later, when her romantic relationship failed, the mother moved again and Christian returned to his original school.

8. Hibbard was employed by Rock Horse Suzuki, a motorcycle racing team based in California, and his job, which included "driv[ing] the transporter from race to race and prepar[ing] the truck for each event," necessarily entailed significant travel for most of the calendar year.

grandmother and Hibbard with primary physical custody to the grandmother (*see Matter of Rodriguez v Delacruz-Swan*, 100 AD3d at 1289).

Finally, we cannot say that Family Court abused its considerable discretion in fashioning the respective visitation schedules—particularly given the instability existing in the mother's life at the time those visitation schedules were crafted. The mother's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Lahtinen, Stein and McCarthy, JJ., concur. Ordered that the appeals from the decisions are dismissed, without costs. Ordered that the orders are affirmed, without costs.