Egan Jr., J.
Appeals (1) from an order of the Family Court of Broome County (Pines, J.), entered February 1, 2013, which granted petitioner’s application, in proceeding No. 1 pursuant to Family Ct Act article 6, for custody of the subject children, and (2) from an order of said court, entered November 27, 2013, which, among other things, dismissed petitioner’s application, in proceeding No. 2 pursuant to Family Ct Act article 6, for custody of the subject children.
Britney UU. (hereinafter the mother) and respondent Randy W. (hereinafter the father)[1] are the parents of three children — a son (born in 2006) and two daughters (born in 2008 and 2009). In October 2010, following a series of indicated *1102 reports of abuse and maltreatment, all three children temporarily were placed in the custody of their paternal grandmother, Renee TT., as part of a safety plan. Ultimately, the paternal grandmother sought custody of her granddaughters, while the maternal grandmother sought (and obtained) custody of her grandson. Thereafter, in January 2011, the parents and the paternal grandmother entered into an order on consent, wherein it was agreed that the mother and the paternal grandmother would have joint legal custody of the girls with physical custody to the paternal grandmother.
A lengthy fact-finding hearing ensued — spanning the period from February 2012 to December 2012 — during the course of which the mother filed a petition seeking to modify Family Court’s January 2011 temporary order. Thereafter, by order entered February 1, 2013, Family Court found that extraordinary circumstances existed and awarded the paternal grandmother custody of her granddaughters with specified visitation to the mother, thereby resolving proceeding No. 1. A fact-finding hearing then was held with respect to the mother’s modification petition, at the conclusion of which Family Court found that, although the mother did not sustain her burden of proof as to her custody application, she had made sufficient progress to warrant increased visitation with her daughters. Accordingly, by order entered November 27, 2013, Family Court awarded the mother and the paternal grandmother joint legal custody of the subject children with primary physical custody to the paternal grandmother and expanded visitation to the mother, thereby resolving proceeding No. 2. The mother now appeals from Family Court’s February 2013 and November 2013 orders.[2]
“It is well settled that a parent has a claim of custody of his or her child, superior to that of all others, in the absence of surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances” (Matter of Yandon v Boisvert, 130 AD3d 1257, 1258 [2015] [internal quotation marks and citations omitted]; see Matter of Sweeney v Sweeney, 127 AD3d 1259, 1260 [2015]). That said, the parent in question “may be supplanted where he or she engages in gross misconduct or other behavior evincing an utter indifference and irresponsibility relative to the parental role” (Matter of Darrow v Darrow, *1103 106 AD3d 1388, 1391-1392 [2013] [internal quotation marks and citations omitted]; accord Matter of Rodriguez v Delacruz-Swan, 100 AD3d 1286, 1288 [2012]). Examples of behaviors that may, in the aggregate, rise to the level of extraordinary circumstances include allowing the children to live in squalor, failing to address serious substance abuse or mental health issues, instability in the parent’s housing or employment situation, the questionable use of corporal punishment as a means of discipline and other similar behaviors that reflect the parent’s “overall pattern of placing [his or] her own interests and personal relationships ahead of [the] children” (Matter of Darrow v Darrow, 106 AD3d at 1392; see Matter of Rodriguez v Delacruz-Swan, 100 AD3d at 1288-1289). The burden of proving extraordinary circumstances lies with the nonparent— here, the paternal grandmother (see Matter of Sweeney v Sweeney, 127 AD3d at 1260).
The record reflects that the mother was the subject of four indicated reports of abuse and maltreatment, each of which involved either inadequate guardianship or excessive corporal punishment. In this regard, the record was replete with testimony regarding the accumulated trash at the mother’s then residence — including open trash bags, spoiled food and soiled diapers inside of the home. Indeed, one caseworker observed one of the children playing with a soiled diaper and attempting to crawl into an open trash bag located on the floor of the living room of the home, while another described the garbage problem at the mother’s residence as “chronic.”
As to the issue of corporal punishment, a caseworker testified that, with respect to an incident that occurred in December 2009, the mother admitted that she “lost it” and spanked the children “excessively,” and the maternal grandmother testified that she heard and saw the mother strike one of the children repeatedly in October 2010. As to this latter incident, although a caseworker testified that the mother initially claimed that she inadvertently scratched the child, who was standing behind her, on his face with her fingernail while attempting to put on her coat, the mother later acknowledged that she lied about how the injury occurred and admitted striking the child several times with an open hand — albeit not to the face. Notably, even one of the mother’s friends characterized her parenting style as “[r]ough and aggressive.”
Additionally, while the mother testified that she completed parenting and anger management classes in 2011, the caseworkers testified to the mother’s consistent lack of effort in implementing the safety plan that had been adopted for her *1104 children — a plan that included, among other things, addressing the mother’s mental health issues. On this point, both a caseworker and the maternal grandmother testified that the mother has a bipolar disorder — a condition for which the mother admittedly was neither on medication nor in treatment as of the time of the hearing. Indeed, although mental health counseling was part of the safety plan adopted in October 2010, the mother did not seek such an evaluation until late 2011, and the clinical social worker who evaluated the mother and diagnosed her as suffering from an adjustment disorder acknowledged that she based this diagnosis solely upon information provided by the mother over the course of two visits. The social worker further revealed that the mother’s stated purpose in seeking the evaluation was “to refute a diagnosis of bipolar disorder” so that she could return to Family Court and establish that she was “not mentally ill.”
Further, the record reflects the mother’s history of lying to service providers, as well as demonstrated lapses in parental judgment. Notably, before the children were placed with their respective grandmothers in October 2010, the mother suggested that a particular friend of hers might be a resource for the children. The mother later admitted that this friend was the same person who, while sharing a motel room with the mother and her children in May 2009, stored “a water bong in the crib that was in the room.” Finally, although the mother engaged in visitations, she had limited involvement with the children’s medical providers and no contact with the children’s teachers.
In view of the foregoing proof, and “according due deference to Family Court’s factual findings and credibility determinations” (Matter of Rodriguez v Delacruz-Swan, 100 AD3d at 1289 [internal quotation marks, brackets and citation omitted]), we conclude that Family Court’s finding of extraordinary circumstances has a sound and substantial basis in the record. Although Family Court’s resulting order made no reference to the required best interests analysis, “given the well-developed record before us and in light of this Court’s broad fact-finding powers, this issue need not detain us” (Matter of Williams v Boger, 33 AD3d 1091, 1092 [2006] [citation omitted]). On this point, although the sleeping arrangements for the girls at the paternal grandmother’s house were less than ideal, the fact remains that, when the hearing in proceeding No. 1 concluded in December 2012, the mother was residing with her hus *1105 band — a convicted “violent felon”[3] who was on parole and whom the local social services agency had instructed could not be around the mother’s children — and the mother’s mental health issues remained largely unaddressed. Under these circumstances, and upon due consideration of all of the relevant factors, we are of the view that an award of custody[4] 5to the paternal grandmother with visitation to the mother was in the girls’ best interests. Accordingly, Family Court’s February 2013 order is affirmed.
As for the mother’s modification proceeding, we agree with Family Court that the mother failed to establish the requisite change in circumstances.[5] Although the mother, together with her friends and neighbors, testified on the first day of the hearing as to the progress she had made in cleaning up and maintaining a suitable residence for the girls, it was revealed on the second day of the hearing that the mother and her husband, from whom she had been estranged and with whom she had only recently reconciled, were living in a local motel. The mother and her husband purportedly were poised to rent another house — premises described by the husband as “liveable” — but no lease was signed as of the conclusion of the hearing. Additionally, both the mother and her husband, the latter of whom had lost his job due to a verbal altercation with a fellow employee, alluded to certain financial difficulties that, in turn, apparently were one source of stress in their marriage. Finally, although both the mother and the paternal grandmother testified that visitations between the mother and the girls were going well, the mother still had little to no involvement/contact with the children’s educational or medical providers and her mental health issues remained essentially unaddressed. Under these circumstances, we agree with Fam *1106 ily Court that the mother did not meet her burden of proof on her modification petition.
The mother’s failure to demonstrate the threshold change in circumstances obviated any need for Family Court to proceed to a best interests analysis (see generally Matter of Trimble v Trimble, 125 AD3d 1153, 1154-1155 [2015]) and, inasmuch as extraordinary circumstances previously had been established, Family Court was not required to revisit that issue in the context of the mother’s modification proceeding (see Matter of Ray v Eastman, 117 AD3d 1114, 1114 [2014]; Matter of Cusano v Milewski, 68 AD3d 1272, 1273 [2009]). That said, Family Court nonetheless reiterated that extraordinary circumstances continued to exist and concluded — based upon a consideration of “the totality of the evidence” — that a change in custody was not warranted. Upon our independent review of the record, we agree. The proof at the hearing revealed a continued level of instability in the mother’s life and, at that point in time, a lack of appropriate housing for the children. Additionally, by the time of this hearing, the paternal grandmother had secured improved housing for herself and her granddaughters and was actively engaged with service providers to obtain necessary evaluations and services for the girls, who — by all accounts— were thriving in her care. Under these circumstances, we discern no basis upon which to disturb Family Court’s November 2013 order awarding joint legal custody to the mother and the paternal grandmother, with primary physical placement to the paternal grandmother and increased visitation to the mother. The mother’s remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
McCarthy, J.P., Lynch and Devine, JJ., concur. Ordered that the orders are affirmed, without costs.

. The father, who suffers from serious medical conditions, is a resident of a long-term care facility in another state. Although he was (and remains) represented by counsel in these proceedings, he is not a resource for the children and did not otherwise participate in the underlying hearings.

. The father asks that the subject orders be affirmed and that custody of his daughters remain with his mother; the attorney for the children urges this Court to agree with the mother and find that Family Court’s orders are not supported by a sound and substantial basis in the record.

. The mother’s husband testified that he had been convicted of gang assault in the second degree.

. Although Family Court’s February 2013 order did not specify whether it was continuing the joint legal custody previously awarded to the mother and the paternal grandmother in January 2011 or whether it was awarding sole legal and physical custody of the girls to the paternal grandmother, Family Court’s November 2013 order clarified this issue.

. Although the mother commenced proceeding No. 2 (seeking to modify Family Court’s January 2011 temporary order) prior to the conclusion of the hearing in proceeding No. 1 and, hence, prior to Family Court rendering a finding of extraordinary circumstances, such a finding had been made by the time that the hearing on the mother’s modification petition commenced in March 2013. Hence, it was incumbent upon the mother to demonstrate a change in circumstances (compare Matter of Dumond v Ingraham, 129 AD3d 1131, 1132-1133 [2015]).