*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: October 20, 2016

522042
520847

_____

In the Matter of EVELYN EE.,
                    Appellant,

        v

AYESHA FF.,
                    Respondent.

(Proceeding No. 1.)
_____

In the Matter of JODY CC.,
                    Respondent,

        v

EVELYN EE.,
                    Appellant,

        and

SCHENECTADY COUNTY DEPARTMENT
    OF SOCIAL SERVICES,
                    Respondent.

(Proceeding No. 2.)
_____

In the Matter of KARMA EE.,
    Alleged to be a Neglected
    Child.

SCHENECTADY COUNTY DEPARTMENT
    OF SOCIAL SERVICES,
                    Respondent;

EVELYN EE.,
                    Appellant.

(Proceeding No. 3.)
_____

MEMORANDUM AND ORDER

In the Matter of AYESHA FF.,
                    Respondent,

        v

EVELYN EE.,
                    Appellant.

(Proceeding No. 4.)
_____

In the Matter of KARMA EE. and
    Another, Alleged to be
    Neglected Children.

SCHENECTADY COUNTY DEPARTMENT
    OF SOCIAL SERVICES,
                    Respondent;

EVELYN EE.,
                    Appellant.

(Proceeding No. 5.)
_____

In the Matter of KARMA EE. and
    Another, Alleged to be
    Neglected Children.

SCHENECTADY COUNTY DEPARTMENT
    OF SOCIAL SERVICES,
                    Respondent;

EVELYN EE.,
                    Appellant.

(Proceeding No. 6.)
_____


Calendar Date:   September 15, 2016

Before:  Peters, P.J., Egan Jr., Lynch, Rose and Aarons, JJ.
                    _____


        Paul J. Connolly, Delmar, for appellant.

        Karen R. Crandall, Glenville, for Ayesha FF., respondent.

        Timothy J. Brennan, Schenectady, for Jody CC., respondent.

        Christopher H. Gardner, County Attorney, Schenectady
(Frank S. Salamone of counsel), for Schenectady County Department
of Social Services, respondent.

        Alexandra G. Verrigni, Rexford, attorney for the children.


                    _____



Egan Jr., J.

        Appeals (1) from an order of the Family Court of
Schenectady County (Skoda, J.), entered November 6, 2014, which,
among other things, dismissed petitioner's application, in
proceeding No. 1 pursuant to Family Ct Act article 6, to modify a
prior order of custody, and (2) from an order of said court,
entered March 2, 2015, which, among other things, (a) granted
petitioners' applications, in proceeding Nos. 2 and 4 pursuant to
Family Ct Act article 6, for custody of the subject children, and
(b) granted petitioner's applications, in proceeding Nos. 3, 5
and 6 pursuant to Family Ct Act article 10, to adjudicate the
subject children to be neglected.

        Evelyn EE. (hereinafter the mother) has five biological
children, three of whom — Lilith EE. (born in 2005), Karma EE.
(born in 2013) and Aiden EE. (born in 2014) — are the subjects of
these appeals.  Following Lilith's birth, questions were raised
regarding the mother's allegedly untreated mental health issues,
as the result of which the mother eventually consented to placing
the child in the custody of the mother's half sister (hereinafter

the aunt).  In August 2009, the mother commenced the first of these six proceedings seeking to regain custody of Lilith. Although Family Court (Taub, J.H.O.) dismissed the petition for failure to state a cause of action, this Court reversed, directed that the petition should be reinstated and, in May 2013, remitted the matter to Family Court for further proceedings.[1]

In the interim, Karma was born and, within days of her birth, was temporarily removed from the mother's home — on consent — and placed with a close family friend.[2]  Shortly thereafter, the friend commenced proceeding No. 2 in April 2013 seeking sole custody of Karma, and the Schenectady County Department of Social Services (hereinafter DSS) commenced proceeding No. 3 alleging that the mother had derivatively neglected Karma.[3]  Following Aiden's birth, the aunt commenced proceeding No. 4 in August 2014 seeking sole custody of the child — citing the mother's alleged mental instability and substance abuse, as well as the fact that the aunt already had custody of

---

[1]  The mother subsequently amended her petition in July 2013.

[2]  Following a hearing pursuant to Family Ct Act § 1028, Karma was returned to the mother's care in July 2013.  In December 2013, the Schenectady County Department of Social Services again sought to remove Karma from the mother's care — this time because the mother had tested positive for cocaine in September 2013.  Following a second hearing, Family Court granted that request, removed Karma from the mother's care and again placed the child with the family friend.

[3]  The derivative neglect allegation stemmed from a March 2013 adjudication of neglect with respect to one of the mother's other children, Devon EE. (born in 2010).  The incident involving Devon occurred in October 2011, at which time the child was discovered crying in a stroller while the mother, who was described as highly intoxicated, was passed out on a grassy area adjacent to a city street (Matter of Devon EE. [Evelyn EE.], 125 AD3d 1136 [2015], lv denied 25 NY3d 904 [2015]).

two of Aiden's siblings.  DSS, in turn, commenced proceeding Nos. 5 and 6 alleging — in virtually identical petitions — that the mother had neglected Karma and Aiden.  Specifically, the petitions alleged that, on August 4, 2014, while acting as the sole caretaker for the children, the mother had a blood alcohol content of .14%.  Combined hearings on the various petitions thereafter followed.

By order entered November 6, 2014, Family Court (Skoda, J.), among other things, dismissed the mother's petition in proceeding No. 1 seeking custody of Lilith and, after finding both that extraordinary circumstances existed to divest the mother of custody and that the child's best interests would be served by continuing her placement with her aunt, awarded sole legal and physical custody of Lilith to the aunt with supervised visitation to the mother.  Thereafter, by order entered March 2, 2015, Family Court, among other things, granted the friend's and the aunt's respective petitions — in proceeding Nos. 2 and 4 — for custody of Karma and Aiden and awarded sole legal and physical custody of Karma to the family friend (with supervised visitation to the mother) and sole legal and physical custody of Aiden to the aunt (with supervised visitation to the mother). Such awards also constituted Family Court's disposition of the then pending neglect petitions with respect to Karma and Aiden (proceeding Nos. 5 and 6) (see Family Ct Act § 1055-b [a] [v] [A]).[4]  These appeals by the mother ensued.

Preliminarily, we reject the mother's assertion that she was denied the right to counsel.  On the second day of hearings, the mother advised Family Court that she was "having some issues" with assigned counsel and requested either that counsel be replaced or that "something . . . be done" because counsel was refusing to subpoena certain witnesses or documentary evidence upon her behalf.  In response, counsel advised the court that he

---

[4]  Family Court previously had adjudicated Karma and Aiden to be neglected children and combined the dispositional hearing for those neglect proceedings with the then pending custody hearing for those children.

did not believe that the requested witnesses/evidence – to the extent that such proof was even relevant – would reflect favorably upon the mother and, in his professional judgment, acquiescing to the mother's wishes would not be in her best interests. Following an extended colloquy, during the course of which the potential consequences of pursuing the requested testimony and evidence were fully explored, and in response to the mother's continued insistence that such witnesses/proof be produced, Family Court directed counsel to issue subpoenas accordingly. Three of the four requested witnesses then appeared and testified.

Despite having obtained the very relief that she so persistently requested, the mother now argues that Family Court, by directing counsel to follow his client's expressed wishes and issue the subject subpoenas, effectively overruled counsel's professional judgment and, in so doing, deprived the mother of her right to counsel. We disagree. The mother had the benefit of counsel – and his professional judgment – throughout the course of these proceedings (compare Matter of Deon M. [Vernon B.], 68 AD3d 1740, 1741-1742 [2009]),[5] and our review of the record confirms that counsel at all times endeavored to zealously represent his client and safeguard the mother's best interests – despite her insistence in pursuing lines of inquiry that were only tangentially relevant to the issues before Family Court. Under these circumstances, we find no deprivation of the mother's constitutional or statutory right to counsel. To the extent that the mother's brief may be read as asserting an ineffective assistance of counsel claim, we find any argument on this point to be equally lacking in merit.

---

[5]  Notably, the mother affirmatively indicated that she wished for assigned counsel to continue to represent her and, in any event, a disagreement as to trial strategy does not constitute good cause for the substitution of counsel (see Matter of Wiley v Musabyemariya, 118 AD3d 898, 900-901 [2014], lv denied 24 NY3d 907 [2014]).

With respect to custody of Lilith (proceeding No. 1),[6] "[i]t is well settled that a parent has a claim of custody of his or her child that is superior to that of all others, absent surrender, abandonment, persistent neglect, unfitness, disruption of custody over a prolonged period of time or the existence of other extraordinary circumstances" (Matter of Peters v Dugan, 141 AD3d 751, 752 [2016] [internal quotation marks and citations omitted]; see Matter of Renee TT. v Britney UU., 133 AD3d 1101, 1102 [2015]). The burden of proving extraordinary circumstances rests with the nonparent (see Matter of Battisti v Battisti, 121 AD3d 1196, 1197 [2014]) — here, the aunt — and examples of such extraordinary circumstances include, among other things, "failing to address serious substance abuse or mental health issues" (Matter of Renee TT. v Britney UU., 133 AD3d at 1103) or failing "either to maintain substantial, repeated and continuous contact with the child or to plan for the child's future" (Matter of Rodriguez v Delacruz-Swan, 100 AD3d 1286, 1288 [2012] [internal quotation marks, brackets and citation omitted]).

The aunt testified that the mother and Lilith came to visit her for a weekend when the child was approximately one month old; the mother left, and Lilith remained with the aunt. On the child's first birthday in 2006, the aunt filed for custody, in response to which the mother accused the aunt of kidnapping. Although Lilith was returned to the mother's custody for approximately one year, the aunt regained custody of the child at some point in 2007, and Lilith has lived with her continuously since that time. The aunt testified that, during the seven years that preceded the 2014 custody hearing, the mother had limited contact with the child — specifically, the mother engaged in supervised visits with Lilith on only a sporadic basis, failed to attend any of the child's school conferences, concerts, activities or birthday parties, rarely

_____

[6] According to Family Court, the aunt previously was awarded custody of Lilith on consent in August 2008. As no prior finding of extraordinary circumstances had been made, the aunt bore the burden of demonstrating such circumstances here (see Matter of Smith v Anderson, 137 AD3d 1505, 1507 n 4 [2016]).

spoke with the child by phone, did not send the child any cards or letters and, at one point, allowed two years to elapse without seeing the child.

Although the mother disputed the aunt's account, contended that she saw the child on a more frequent and consistent basis and attributed the two-year gap in visitation to an inability to locate the aunt, such testimony presented a credibility issue for Family Court to resolve (see e.g. Matter of Shana SS. v Jeremy TT., 111 AD3d 1090, 1092 [2013], lv denied 22 NY3d 862 [2014]). In our view, the prolonged disruption in custody, coupled with the mother's failure to maintain substantial and continuous contact with the child and to adequately address her longstanding substance abuse and mental health issues (to be discussed infra), is sufficient to establish the extraordinary circumstances required to divest the mother of custody. Finally, based upon our review of the record as a whole, we agree that Lilith's best interests are served by an award of custody to the aunt. Accordingly, the mother's petition in proceeding No. 1 was properly dismissed.

As for the neglect petitions relative to Karma and Aiden (proceeding Nos. 3, 5 and 6), "a finding of neglect will be sustained if the petitioner demonstrated, by a preponderance of evidence, that the children's physical, mental or emotional condition was harmed or is in imminent danger of such harm as a result of the parent's or caretaker's failure to exercise the minimum degree of care that a reasonably prudent person would have used under the circumstances. Notably, a finding of neglect does not require actual injury or impairment, but only an imminent threat that such injury or impairment may result, which can be established through a single incident or circumstance" (Matter of Dylynn V. [Bradley W.], 136 AD3d 1160, 1161-1162 [2016] [internal quotation marks, brackets and citations omitted]; see Matter of Daniel X. [Monica X.], 114 AD3d 1059, 1060 [2014]). Derivative neglect, in turn, "is established where the evidence demonstrates an impairment of parental judgment to the point that it creates a substantial risk of harm for any child left in that parent's care, and the prior neglect determination is sufficiently proximate in time to reasonably

conclude that the problematic conditions continue to exist" (Matter of Xiomara D. [Madelyn D.], 96 AD3d 1239, 1240 [2012] [internal quotation marks and citations omitted]; accord Matter of Neveah AA. [Alia CC.], 124 AD3d 938, 939 [2015]; see Matter of Ilonni I. [Benjamin K.], 119 AD3d 997, 997 [2014], lv denied 24 NY3d 914 [2015]).

The initial neglect petition filed with respect to Karma alone (proceeding No. 3), which was filed shortly after the child's birth in 2013, was based upon the prior finding of neglect against the mother as to Devon, as well as the mother's failure to successfully address her ongoing mental health and substance abuse issues. As noted previously, the prior adjudication of neglect as to Devon – made in March 2013 – stemmed from the October 2011 incident wherein the mother was discovered passed out on a grassy area adjacent to a city street while her child was crying in a stroller for approximately 45 minutes (see note 3, supra). Although the mother claimed to have consumed only three drinks on the evening in question and attributed her slurred speech and agitated demeanor to certain medications that she then was taking, subsequent testing revealed a blood alcohol content of .16%.

Regardless of whether the prior neglect of Devon is measured from the date of its occurrence (October 2011) or the date of the resulting neglect adjudication (March 2013), we are satisfied that such neglect is sufficiently proximate in time to reasonably conclude that the problematic conditions affecting the mother, i.e., her substance abuse, still exist. As this Court has consistently held, "there is no bright-line, temporal rule beyond which we will not consider older child protective determinations" (Matter of Ilonni I. [Benjamin K.], 119 AD3d at 998 [internal quotation marks and citations omitted]; accord Matter of Iryanna I. [Benjamin K.], 132 AD3d 1096, 1097 [2015]; Matter of Sumaria D. [Madelyn D.], 121 AD3d 1203, 1204 [2014]), and we are satisfied that the record as a whole supports Family Court's finding that the mother had ongoing and unaddressed

substance abuse issues.[7]

Further support for Family Court's finding of neglect as to Karma may be found in the proof adduced with respect to the mother's mental health issues. The mother, by her own admission, has been hospitalized three times for mental health issues – most recently following the birth of Lilith in 2005 – and has two prior suicide attempts. In addition to suffering from attention deficit hyperactivity disorder and epilepsy, the mother testified that she has been diagnosed with posttraumatic stress disorder, authority defiance disorder[8] and seasonal depression – the latter of which, according to the mother, subsequently was reclassified as bipolar disorder and borderline personality disorder. Although the mother admittedly was – at the time of the underlying hearings – seeing a mental health counselor "[m]aybe once every other month," a DSS caseworker testified that the mother denied having any mental health issues – contending instead that "they were lies" made up by a particular DSS case

_____

[7] In reaching this conclusion, we have not considered the mother's September 2013 positive screen for cocaine or her August 2014 positive screen for alcohol, as such proof postdates the May 2013 neglect petition filed in proceeding No. 3 and there does not appear to have been a motion to conform the pleadings to the proof (compare Matter of Alexander Z. [Melissa Z.], 129 AD3d 1160, 1161-1162 [2015], lv denied 25 NY3d 914 [2015]). Those subsequent screening results, however, were properly admitted with respect to the August 2014 neglect petitions filed with respect to Karma and Aiden in proceeding Nos. 5 and 6, as well as in the context of the August 2014 custody petition filed with respect to Aiden (proceeding No. 4).

[8] The mother succinctly stated, "I have a problem with authority." When questioned on this point, the mother indicated that "authority" usually included DSS and law enforcement officials but, depending upon the circumstances, could extend to Family Court if she felt that she was "being wronged." As to her relationship with her various family members, the mother stated, "We don't exactly get along at all, any of us."

manager.  Under these circumstances, we have no quarrel with Family Court's finding of neglect as to Karma in proceeding No. 3.

Additional (and virtually identical) neglect proceedings were commenced in August 2014 with respect to both Aiden and Karma (proceeding Nos. 5 and 6) – citing the mother's ongoing substance abuse and her failure to adopt safe sleeping habits with respect to the then infant Aiden.  As to the issue of substance abuse, the mother insisted that she consumed alcohol only in moderation and denied any illegal drug use since she was a teenager.  The proof adduced at the hearing, however, established that, as noted previously, the mother had a positive alcohol screen in October 2011 (with a blood alcohol content of .16%), a positive screen for cocaine in September 2013 and another positive alcohol screen in August 2014 (revealing a blood alcohol content of .14%).  Notably, the August 4, 2014 screen resulted when a service provider arrived at the mother's residence that day to facilitate a supervised visitation with Karma and discovered the mother, who had recently given birth to Aiden, stumbling, slurring her words and smelling of alcohol.[9] Although the mother denied alcohol use on that date, again contending that her observed condition was a side effect of either her medications, her speech impediment or the fact that she was not wearing her knee brace, the service provider testified that she "observed beer cans lined up on the counter" in the kitchen and "a white powder on the floor."  Additional testimony revealed that, although the mother had been instructed that there were to be no blankets in Aiden's crib unless he was swaddled, the child was found on the day in question – covered with a loose blanket – in a crib containing toys.  Inasmuch as the record clearly reflects either an inability or an unwillingness on the part of the mother to, among other things, effectively address and resolve her well-documented substance abuse issues, we have no quarrel with Family Court's adjudication of neglect as to Karma and Aiden in proceeding Nos. 5 and 6.

_____

[9]  This incident was the impetus behind the commencement of proceeding Nos. 4, 5 and 6.

Finally, as to the family friend's request for custody of Karma (proceeding No. 2) and the aunt's request for custody of Aiden (proceeding No. 4), as well as with respect to the dispositions fashioned in the aforementioned neglect proceedings, we are satisfied that the record supports a finding of extraordinary circumstances — specifically, the prior findings of neglect made against the mother, the mother's failure to address her ongoing substance abuse issues and her unresolved mental health issues — sufficient to divest the mother of custody. Further, upon reviewing the relevant testimony, we are satisfied that awarding custody of Karma to the family friend and awarding custody of Aiden to the aunt is in the children's respective best interests. The mother's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Peters, P.J., Lynch, Rose and Aarons, JJ., concur.


ORDERED that the orders are affirmed, without costs.




ENTER:


Robert D. Mayberger
Clerk of the Court