Matter of Chasity CC. v Frederick DD. (2018 NY Slip Op 07012)





Matter of Chasity CC. v Frederick DD.


2018 NY Slip Op 07012


Decided on October 18, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 18, 2018

525481

[*1]In the Matter of CHASITY CC., Appellant,
v
FREDERICK DD., Respondent, et al., Respondent. (Proceeding No. 1.)
In the Matter of MARK DD., Petitioner,
v
TRACEY DD., Respondent, and FREDERICK DD., Respondent, and CHASITY CC., Appellant. (Proceeding No. 2.)

Calendar Date: September 7, 2018

Before: Garry, P.J., McCarthy, Egan Jr., Lynch and Devine, JJ.


Lisa Miller, McGraw, for appellant.
Rural Law Center of New York, Castleton (Kelly L. Egan of counsel), for Frederick DD., respondent.
Mark A. Schaeber, Liverpool, attorney for the children.



MEMORANDUM AND ORDER
Egan Jr., J.
Appeal from an order of the Family Court of Cortland County (Campbell, J.), entered July 27, 2017, which, among other things, granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, for custody of the subject children.
Chasity CC. (hereinafter the mother) and respondent Frederick DD. (hereinafter the father) are the parents of two children (born in 2004 and 2007). In 2006, the father petitioned for custody of the older child and, on consent, Family Court awarded the father and the mother joint legal custody of the older child, with primary physical placement with the father and visitation to the mother. In 2008, following the birth of the younger child, Family Court granted the father's petition seeking physical custody of the younger child, awarded the mother visitation, denied her cross petition seeking custody of the younger child and dismissed her violation and modification petitions. Subsequently, in December 2015, the father was arrested on certain drug-related charges and the children began residing with respondent Tracey DD., the children's paternal aunt (hereinafter the aunt). In September 2016, Family Court, on consent, awarded the mother, the father and the aunt joint legal custody of the children, with primary physical placement with the aunt, visitation to the father and supervised visitation to the mother on alternate weekends and Wednesdays.
In December 2016, the mother filed a modification petition (proceeding No. 1) seeking custody and primary physical placement of the children. Petitioner Mark DD., the children's paternal uncle (hereinafter the uncle), thereafter filed a custody petition and an amended custody petition (proceeding No. 2) also seeking custody and primary physical placement of the children. Following a fact-finding hearing, Family Court dismissed the mother's modification petition, and granted the uncle's petition by awarding him, the mother and the father joint legal custody, with primary physical placement with the uncle, visitation to the father and supervised visitation to the mother. The mother now appeals, contending, among other things, that Family Court's order lacks a sound and substantial basis in the record as there was insufficient evidence presented at the fact-finding hearing establishing the existence of extraordinary circumstances.
It is well settled that, in a custody dispute between a parent and a nonparent, "[a] parent's claim to custody of his or her children is superior to that of all others absent a showing of surrender, abandonment, persistent neglect, unfitness, an extended disruption of custody or other like extraordinary circumstances" (Matter of Durgala v Batrony, 154 AD3d 1115, 1117 [2017] [internal quotation marks and citation omitted]; see Matter of Bennett v Jeffreys, 40 NY2d 543, 544 [1976]). Where, as here, no finding of extraordinary circumstances has previously been made, it is the nonparent's burden to demonstrate the existence thereof (see Matter of Perry v Perry, 160 AD3d 1144, 1144-1145 [2018]; Matter of Heather U. v Janice V., 152 AD3d 836, 837-838 [2017]). In determining whether extraordinary circumstances exist, Family Court may consider, among other relevant factors, "the overall length of time the child has lived with the nonparent and the quality of that relationship, the particular circumstances existing at the time custody was awarded to the nonparent, the length of time the parent allowed such an order to continue without attempting to assume the primary parental role and the specific provisions and conditions, if any, of such order" (Matter of Campbell v Brewster, 9 AD3d 620, 621-622 [2004] [internal quotation marks, brackets and citation omitted]; see Matter of McDevitt v Stimpson, 281 AD2d 860, 862 [2001]). Upon making a threshold showing of extraordinary circumstances, Family Court may then consider what custodial arrangement serves the best interests of the children (see Matter of Heather U. v Janice V., 152 AD3d at 838).
Here, the father was the primary caretaker for the subject children for nearly the entirety of their childhood until such time as he was arrested on drug charges in December 2015. Immediately following the father's arrest and incarceration, the children moved in with the aunt, a temporary order to that effect was entered and, in September 2016, Family Court awarded joint legal custody to the aunt, the father and the mother and primary physical placement to the aunt, with the consent of both the father and the mother. At the time of the fact-finding hearing, therefore, the children had been living with the aunt for approximately 18 months. Notably, contrary to the mother's assertion, the evidence at the hearing sufficiently demonstrated that, during the 18 months that the aunt had physical placement of the children, the mother made [*2]numerous hotline reports to Child Protective Services (hereinafter CPS) against the aunt [FN1]. Based on the negative impact that the resulting CPS investigations were having on the aunt's home life, including her own two children, the aunt subsequently indicated that she was no longer willing to serve as a placement resource for the children, prompting the uncle to file a petition seeking custody of the children.
The hearing revealed that, after splitting up with the father, the mother got married and had three additional children (hereinafter the half siblings) with her husband. At the fact-finding hearing, Family Court took judicial notice of all prior proceedings involving the mother and the half siblings,[FN2] as the half siblings were also not residing with the mother at that time [FN3]. The mother, therefore, does not have primary physical placement of any of her five children and, instead, has consistently consented to their removal and placement with others, and she has only been granted supervised visitation with respect to same. Moreover, the mother testified that she continues to reside with her husband — who has his own CPS history of child abuse — in the same residence from which the half siblings were recently removed due to unsafe and unsanitary conditions therein. The mother, however, failed to offer any evidence demonstrating that she has taken any affirmative steps to address or remedy the deplorable housing conditions that, among other issues, resulted in the removal of the half siblings.
Additionally, despite consenting to the placement of the subject children with the aunt in September 2016, the mother testified that she was wholly unaware of how or why the subject children had come to live with the aunt following the father's incarceration. Further, rather than using the 18 months since the father's incarceration to stabilize her own housing situation, the mother instead has played an active role in destabilizing the housing situation for the subject children by making repeated unfounded allegations to CPS involving the aunt. In our view, given the aunt's withdrawal as a placement resource due to the mother's affirmative conduct, the mother's inability or unwillingness to appreciate the reasons why her children have been previously removed from her care or address the issues that resulted in the removal of the half siblings from the same residence in which she wants the subject children to return, coupled with the fact that the mother is still only entitled to supervised visitation, the mother has demonstrated a continuing lack of parental responsibility and unfitness to care for her children (see Matter of Perry v Perry, 160 AD3d at 1144; Matter of Durgala v Batrony, 154 AD3d at 1117; Matter of Darrow v Darrow, 106 AD3d 1388, 1391-1392 [2013]). Accordingly, under these circumstances and giving deference to Family Court's fact-finding and credibility determinations, we find that Family Court's finding of extraordinary circumstances is sufficiently supported by a sound and substantial basis in the record.
We likewise find that Family Court appropriately determined that the children's best interests are served by awarding the uncle primary physical placement of the children. The mother testified at the fact-finding hearing that she presently resides with her husband, her mother-in-law and sister-in-law in the mother-in-law's three-bedroom apartment. Although she testified, in conclusory fashion, that there would be adequate room in the apartment for the children, she offered no specifics as to where the children would sleep or whether they would have a room of their own. Further, as previously stated, the mother offered no testimony regarding how the living conditions at her residence have improved since the recent removal of the half siblings. Nor did the mother present any evidence demonstrating whether she was currently employed, was seeking employment or how she otherwise intended to provide for the children's needs.
Meanwhile, the uncle testified that, in light of the aunt's withdrawal from consideration as a placement resource, he wished to obtain custody of the children. The uncle has enjoyed a relationship with the children since their birth, particularly since the father's incarceration, and he has regularly exercised visitation with the children on alternating weekends, often using such time to take the children on outings. The uncle recently purchased a three-bedroom home where he resides with his domestic partner and their 13-month-old daughter. He testified that he is employed and has the means to provide for the subject children. He indicated that he has taken an interest in the children's education, has reached out to the children's teachers and helps the children with their school work. The uncle also testified regarding the numerous preparations that he made in the event that he was to obtain primary physical placement of the children, including making arrangements for the children's school, pediatrician, dentist, eye care and medical insurance. He also testified that he was willing to encourage a positive relationship between the children and both the father and the mother. Accordingly, based on the totality of the circumstances, we find that Family Court's award of primary physical placement to the uncle is supported by a sound and substantial basis in the record and serves the best interests of the children (see Matter of Battisti v Battisti, 121 AD3d 1196, 1198 [2014]).
Lastly, to the extent that the mother claims that she was denied the effective assistance of counsel at the fact-finding hearing, we find said contention to be without merit. In addition to having the mother testify on her own behalf, the mother's counsel called two additional witnesses in support of her modification petition and provided her with ample opportunity to address Family Court and submit any testimony that she thought might be relevant and beneficial to her application. The mother's counsel also effectively cross-examined the aunt, the uncle and the father and presented a cogent closing statement in support of the mother's modification petition and in opposition to the uncle's custody petition. Accordingly, viewing the totality of the circumstances, we are satisfied that the mother received meaningful representation (see Matter of Brent O. v Lisa P., 161 AD3d 1242, 1246-1247 [2018]; Matter of Audreanna VV. v Nancy WW., 158 AD3d 1007, 1010-1011 [2018]).
Garry, P.J., McCarthy, Lynch and Devine, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Of the four CPS investigations that were commenced, three were ultimately determined to be unfounded and one was still being investigated as of the fact-finding hearing.

Footnote 2: We find no error in Family Court taking judicial notice of the prior Family Ct Act article 10 proceedings with regard to the mother and the half siblings or the prior Family Ct Act article 6 proceedings involving the subject children.

Footnote 3: Rather, in a separate Family Ct Act article 10 proceeding with respect to the half siblings, the mother had consented to a finding of child neglect, without admissions, resulting in the half siblings being removed from the mother's home in July 2016. Specifically, Family Court determined that, despite the assistance of a parent educator and numerous interventions by a Department of Social Services caseworker, the mother's home "continued to be dirty with significant garbage, dirty litter boxes, cat feces on the floor, and dirty dishes." Family Court also indicated that the mother had inappropriately allowed people with significant CPS histories into her home, she remained at risk of eviction due to the failure to pay rent and the conditions of her home were not adequate for the half siblings to remain therein. Accordingly, Family Court awarded their maternal grandmother primary physical placement of the half siblings.