Matter of Tasha AA. v Tammy DD. (2019 NY Slip Op 09334)





Matter of Tasha AA. v Tammy DD.


2019 NY Slip Op 09334


Decided on December 26, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 26, 2019

527320

[*1]In the Matter of Tasha AA., Respondent,
v
Tammy DD. et al., Appellants.

Calendar Date: November 14, 2019

Before: Garry, P.J., Clark, Mulvey, Pritzker and Reynolds Fitzgerald, JJ.


Adam H. Van Buskirk, Auburn, for Tammy DD., appellant.
Michelle I. Rosien, Philmont, for Davaughn CC., appellant.
Larisa Obolensky, Delhi, for respondent.
Susan McNeil, Brooktondale, attorney for the child.



Reynolds Fitzgerald, J.
Appeal from an order of the Family Court of Broome County (Connerton, J.), entered July 27, 2018, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the subject child.
Respondent Tammy DD. (hereinafter the mother) and respondent Davaughn CC. (hereinafter the father) are the parents of a child (born in 2016). Petitioner (hereinafter the grandmother) is the child's paternal grandmother. In January 2017, the parents brought the child from Georgia to New York to reside with the grandmother and then they returned to Georgia. In June 2017, the mother advised the grandmother that she was coming to retrieve the child, prompting the grandmother to file a petition seeking sole legal custody. When the mother arrived at the grandmother's residence, there was an altercation, and the mother was arrested. As a result, Child Protective Services substantiated a finding of inadequate guardianship against the mother, and the child remained with the grandmother. Thereafter, the father relocated to New York, and both he and the mother filed their own custody petitions. A fact-finding hearing was held on all petitions over several days after which Family Court determined that the grandmother met her burden of establishing extraordinary circumstances and then awarded custody of the child to the grandmother, with reasonable and liberal parenting time for each parent, as arranged by the grandmother. The mother and the father appeal.
"A parent has a claim of custody of his or her child that is superior to that of all others, absent surrender, abandonment, persistent neglect, unfitness, disruption of custody over a prolonged period of time or the existence of other extraordinary circumstances" (Matter of Karen Q. v Christina R., 170 AD3d 1446, 1447 [2019] [internal quotation marks, brackets and citations omitted]; see Matter of Sweeney v Sweeney, 127 AD3d 1259, 1260 [2015]). "[T]he parent in question may be supplanted where he or she engages in gross misconduct or other behavior evincing an utter indifference and irresponsibility relative to the parental role" (Matter of Renee TT. v Britney UU., 133 AD3d 1101, 1102 [2015] [internal quotation marks and citations omitted]; see Matter of Darrow v Darrow, 106 AD3d 1388, 1391-1392 [2013]). "A nonparent bears the heavy burden of establishing that there are extraordinary circumstances and, thus, that he or she has standing to seek custody of another person's child" (Matter of Donna SS. v Amy TT., 149 AD3d 1211, 1212 [2017] [citations omitted]; see Matter of DellaPiana v DellaPiana, 161 AD3d 1228, 1230 [2018]). Examples of behaviors that may, in the aggregate, rise to the level of extraordinary circumstances include instability in the parent's housing or employment situation (see Matter of Renee TT. v Britney UU., 133 AD3d at 1103), failure to plan for the child's future (see Matter of Rodriguez v Delacruz-Swan, 100 AD3d 1286, 1288 [2012]) and domestic violence (see Matter of Mary D. v Ashley E., 158 AD3d 1022, 1022-1023 [2018]; Matter of Turner v Maiden, 70 AD3d 1214, 1217 [2010]).
Contrary to the mother's contention,[FN1] the evidence demonstrates that the grandmother satisfied her threshold burden of establishing the existence of extraordinary circumstances. The parents voluntarily relinquished care and control of the child. Both parents testified that they could not economically care for the child in Georgia. The father testified that he was "going through hardships down there" and that it was "hard for [them] . . . to pay the rent [and] continue providing for food for . . . [the] whole family . . . [and they were] living paycheck to paycheck . . . and it was . . . excruciating." Additionally, there were incidents of domestic violence. The mother testified that she and the father "had been going through it, . . . the police had been called [and she didn't] want [her] daughter in a toxic situation." As a result of these circumstances, the child has resided with the grandmother for most of her life.[FN2]
During the period that the child has resided with the grandmother, the mother lived in a number of different residences. In at least two of these, she was subjected to significant domestic violence. The mother's two other children reside with their father in Georgia, three hours from the mother's residence. In addition, although she was working at the time of the hearing, her work history has been sporadic. "The level of instability existing in the mother's life, as evidenced by her sporadic employment and precarious housing situation, is indicative of the mother's overall pattern of placing her own interests and personal relationships ahead of [her child] . . . and demonstrates a marked lack of parental responsibility" (Matter of Darrow v Darrow, 106 AD3d at 1392). Additionally, the mother has had only limited contact with the child. She has made no attempt to gain any information as to the child's health care or day care. She failed to offer a plan if she were granted custody, and she has no day care plans in place, instead offering only a generalized plan solely as to the child's housing. Since she filed her petition for custody, the mother has only physically visited the child on approximately three occasions, with those visits occurring when she appeared in court.
The father is currently employed and is in training to become a certified nursing assistant. At one point in time, the father took the child to day care. However, this has not continued. The father has not taken the child to doctor appointments and has failed to inquire into health insurance for the child or the cost of day care. In addition, he has made no arrangements or plans for the child's future. Like the mother, the father has lived in numerous residences. Since his arrival in New York, he has resided with an uncle, friends, public housing [FN3] and his sister. In Georgia, he had three different residences and was incarcerated for 30 days. Neither parent financially supports the child. In the aggregate, both parents' instability in their housing and employment, failure to plan for the child's future, irresponsibility and indifference to asserting a parental role, coupled with the child residing with the grandmother for a prolonged time period, constitute extraordinary circumstances.
"With the requisite extraordinary circumstances having been established, custody is determined based upon the best interests of the child" (Matter of DellaPiana v DellaPiana, 161 AD3d at 1231 [citations omitted]). "Factors to be considered in a best interests analysis include maintaining stability in the child's life, the quality of the respective home environments, the length of time the present custody arrangement has been in place and each party's past performance, relative fitness and ability to provide for and guide the child's intellectual and emotional development" (Matter of Nevaeh MM. [Sheri MM.-Charles MM.], 158 AD3d 1001, 1003-1004 [2018] [internal quotation marks and citations omitted]; accord Matter of Sweeney v Daub-Stearns, 166 AD3d 1340, 1342 [2018]).
The grandmother has a stable, caring and nurturing relationship with the child. The grandmother, who is a stay at home mom, has resided at her home for 1½ years with her husband and three children. When the child arrived in New York, the grandmother obtained Medicaid for the child. She has taken the child to the doctor, obtained all immunizations for her and enrolled the child in full-day child care with a nursery school program. She encourages a relationship between the child and both parents, and the father has custodial periods whenever he desires. The grandmother has initiated video chats with the mother to allow the child to become familiar with her voice and face; the mother has continued this practice. The local social services agency conducted an investigation and determined that there were no safety issues with the grandmother's residence. The caseworker also testified that the child appeared healthy and well taken care of.
As to the father's challenge of sole legal custody to the grandmother, although we recognize that "an award of joint custody is an aspirational goal in every custody matter, such an award is not feasible where, as here, the parties' relationship and history evidences an inability to work and communicate with one another in a cooperative fashion" (Matter of Darrow v Darrow, 106 AD3d at 1391 [internal quotation marks and citation omitted]). The record demonstrates that the father and the grandmother were not able to communicate concerning the health and welfare of the child. On the first day of the fact-finding hearing, the grandmother stated that she did not know where the father was living. She testified that her relationship with the father "is not as close as it used to be so [she doesn't] ask questions and dig." Their conversations are limited. Based on the foregoing, we find that Family Court's award of sole custody to the grandmother, with parenting time to the mother and the father, is in the child's best interests.[FN4]
Garry, P.J., Clark, Mulvey and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The father does not challenge the finding of extraordinary circumstances and concedes that the child should reside with the grandmother. He only argues that he should be awarded joint legal custody.

Footnote 2: At the time of the third day of the fact-finding hearing, the child had been living with the grandmother for 17 out of 22 months.

Footnote 3: This residence had bedbugs and was unacceptable.

Footnote 4: The attorney for the child agrees with Family Court's determination that it is in the child's best interests to award sole custody to the grandmother.