Matter of Candy II. v Kandice HH. (2025 NY Slip Op 01411)

Matter of Candy II. v Kandice HH.

2025 NY Slip Op 01411

Decided on March 13, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 13, 2025

CV-23-1823
[*1]In the Matter of Candy II., Appellant,
v
Kandice HH. et al., Respondents. (And Another Related Proceeding.)

Calendar Date:January 6, 2025

Before:Garry, P.J., Pritzker, Ceresia, Powers and Mackey, JJ.

Jane M. Bloom, Monticello, for appellant.
James P. Youngs, Syracuse, for Kandice HH., respondent.
Kenneth M. Tuccillo, Hastings on Hudson, for Devan JJ., respondent.
Ivy M. Schildkraut, Rock Hill, attorney for the children.

Pritzker, J.
Appeal from an order of the Family Court of Broome County (Hollie Levine, J.), entered August 25, 2023, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter Candy II.) is the biological mother of respondent Kandice HH. (hereinafter the mother) and the biological grandmother of the mother's two children (born in 2014 and 2016). Respondent Devan JJ. (hereinafter the father) is the children's father. When the mother was approximately seven years old, Candy II. had her parental rights terminated and the mother was subsequently adopted by another family. At some point, the mother and Candy II. renewed their relationship and the latter began caring for the subject children in her residence. Pursuant to a February 2022 order entered upon consent, the parties agreed that the mother and Candy II. would share joint legal custody and that the children would primarily live with Candy II. until July 2022, at which time primary physical custody would switch to the mother. The order detailed a transition schedule and awarded Candy II., after primary physical custody switched to the mother, visitation with the children every other weekend and such other visitation as agreed on by the parties. As for the father, his custodial rights were "reserved."
In August 2022, Candy II. filed violation and modification petitions, asserting that the mother had violated the February 2022 order by refusing to allow Candy II. to exercise her visitation. In March 2023, Candy II. amended her modification petition, seeking joint legal custody and primary physical custody of the children. Subsequently, the mother filed a modification petition seeking to eliminate Candy II.'s visitation with the children. In March 2023, at the conclusion of a fact-finding hearing, Candy II.'s violation petition was dismissed from the bench. In April 2023, Candy II. filed another violation petition, which Family Court dismissed by an order entered in June 2023.
In June 2023, a fact-finding hearing was held on the modification petitions filed by Candy II. and the mother; Lincoln hearings were held with each of the subject children a month later. Then, in August 2023, Family Court awarded sole custody of the children to the mother, reserved the father's rights to petition the court for an order of custody/visitation and found that, although Candy II. had standing to seek custody and visitation, continued visitation with Candy II. was not in the best interests of the children. Candy II. appeals from the August 2023 order. We affirm.
As an initial matter, Candy II. raises several arguments regarding the dismissal of her August 2022 violation petition. However, the order from which Candy II. has filed a notice of appeal resolved only the modification petitions filed by the mother and Candy II., not either of Candy II.'s violation petitions. As such, because Candy II. has not filed a [*2]notice of appeal from an order dismissing her August 2022 violation petition, this Court is without jurisdiction to review the dismissal of that petition (see CPLR 5515 [1]; Matter of Washington County Dept. of Social Servs. v Oudekerk, 205 AD3d 1108, 1108-1109 [3d Dept 2022]).
We turn now to the merits and, as such, first review Candy II.'s petition seeking joint legal custody and primary physical custody. Of course, the first consideration in such a petition is whether Candy II. has established extraordinary circumstances such that she has standing to seek custody of the children.[FN1] "Extraordinary circumstances, a burden which rests with the nonparent, is a threshold issue that Family Court must determine before addressing the custodial arrangement that would be in the best interests of the children" (Matter of Moore v St. Onge, 307 AD2d 421, 422 [3d Dept 2003] [citations omitted]; see Matter of Mercado v Mercado, 64 AD3d 951, 952 [3d Dept 2009]). Indeed, "a parent has a claim of custody of his or her child that is superior to that of all others, absent surrender, abandonment, persistent neglect, unfitness, disruption of custody over a prolonged period of time or the existence of other extraordinary circumstances" (Matter of Nicole L. v David M., 195 AD3d 1058, 1059-1060 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]; see Matter of Autumn B. v Jasmine A., 220 AD3d 1073, 1074 [3d Dept 2023], lv denied 41 NY3d 901 [2024]). "Such inquiry necessitates consideration of the cumulative effect of all issues present in a given case, including the quality of the child's relationship with the parents and the nonparent, whether the child has lived with the nonparent for any length of time and any neglect by the parents" (Matter of Autumn B. v Jasmine A., 220 AD3d at 1074 [internal quotation marks and citations omitted]; see Matter of Jared MM. v Mark KK., 205 AD3d 1084, 1087 [3d Dept 2022]).
Here, Family Court determined that "equity requires a finding that [Candy II.] has standing under the circumstances as they exist now." This misstates the relevant inquiry the court needed to first undertake; to wit, whether Candy II. has met her threshold burden of establishing extraordinary circumstances. However, although not explicitly stated, it appears from the order that the court found that Candy II. did in fact meet this threshold burden. Specifically, the court cited to the extended periods of time Candy II. had custody of the children. The record reveals that, at the time of the hearing, the older child had resided with Candy II. for six of the nine years she had been alive, and the younger for four of the seven years she had been alive. Although the mother lived with Candy II. and the children for periods of time, the children did not return to the mother's custody during this time. It appears that this custody arrangement began after Candy II. alleged that the mother was unfit and the mother did not appear in court to contest that [*3]determination. Then, in the February 2022 consent order, the mother consented to joint legal custody with Candy II. as well as primary physical custody to remain with Candy II. for a time, until physical custody switched to the mother. The mother also consented to the children having visitation with Candy II. every other weekend. When Candy II. was not permitted to exercise that visitation, she quickly filed violation and modification petitions to address this. Given the foregoing, we find that Family Court's implicit finding that Candy II. established extraordinary circumstances is supported by a sound and substantial basis in the record (see Matter of Autumn B. v Jasmine A., 220 AD3d at 1075; Matter of Lisa F. v Thomas E., 211 AD3d 1367, 1369 [3d Dept 2022]). As such, "the question then turns to what custodial arrangement will further the child's best interests, and relevant factors in that analysis include maintaining stability in the child's life, the quality of the respective home environments, the length of time the present custody arrangement has been in place and each party's past performance, relative fitness and ability to provide for and guide the child's intellectual and emotional development" (Matter of Jared MM. v Mark KK., 205 AD3d at 1087 [internal quotation marks and citations omitted]).
Here, Family Court determined that it was in the best interests of the children for the mother to have sole custody. In this regard, there was testimony regarding educational deficits of the children after leaving Candy II.'s custody. Additionally, the testimony demonstrated that, after the children left her custody, Candy II. went prolonged lengths of time without contacting the mother or attempting to spend time with the children. Candy II. offered no explanation for these time periods. Moreover, testimony established that Candy II. "utter[ly] disregard[ed] the factual circumstances surrounding the termination of her parental rights to the mother for sexual abuse." This was demonstrated by testimony that Candy II. brought the mother's brother and sister, who have a child together, to a visit with the children. Candy II. also believed it was appropriate for her to exercise visitation with the children in the home of the mother's brother, who sexually abused the mother as a child. These lapses in judgment were corroborated by testimony that Candy II. did not complete sex abuse counseling while abuse/neglect proceedings were ongoing involving Candy II.'s sexual abuse of the mother. Given this evidence, and according due deference to the court's credibility determinations, we find a sound and substantial basis in the record supporting Family Court's determination that it was in the best interests of the children for the mother to have sole custody (see Lisa F. v Thomas E., 211 AD3d at 1370; Matter of Sonya M. v Tabu N., 198 AD3d 1206, 1210 [3d Dept 2021], lv denied 38 NY3d 902 [2022]). Furthermore, we do not discern any error in Family Court declining [*4]to order visitation to Candy II. given that, despite the finding of extraordinary circumstances, she does not have standing to seek visitation (see Matter of Romasz v Coombs, 150 AD3d 1495, 1496 [3d Dept 2017]; Matter of Victoria XX. [Thomas XX.], 110 AD3d 1168, 1172 n 3 [3d Dept 2013]; Matter of Hayley PP. [Christal PP.-Cindy QQ.], 77 AD3d 1133, 1135 [3d Dept 2010], lv denied 15 NY3d 716 [2010]; compare Matter of Brooke S.B. v Elizabeth A.C.C., 28 NY3d 1, 28 [2016]). Nor does the mother's prior consent to Candy II. having visitation with the children entitle her to same as the mother has since changed her position and no longer wishes for Candy II. to have contact with the children (see Matter of Romasz v Coombs, 150 AD3d at 1496). Given this determination, Candy II.'s assertions regarding the granting of the mother's petition are rendered academic.
Finally, we are unpersuaded by Candy II.'s argument that she received ineffective assistance of counsel based upon trial counsel opening the door regarding her wrongful acts from decades ago. Simply put, Candy II. has not demonstrated that she was deprived of meaningful representation as her current hindsight speculation is insufficient to undermine the viability of trial counsel's strategy (see Matter of Traci A. v Maxmillion B., 232 AD3d 1070, 1073-1074 [3d Dept 2024]; Matter of Kyle I. v Kandice K., 232 AD3d 1074, 1077 [3d Dept 2024]). Indeed, although counsel's strategy attempting to establish the relationship between Candy II. and the children turned out to be less than perfect, it is not the role of this Court to second-guess counsel's trial strategy or tactics (see Matter of Kyle I. v Kandice K., 232 AD3d at 1077). As such, "upon considering the totality of the representation, we cannot conclude that it was anything less than meaningful" (Matter of Traci A. v Maxmillion B., 232 AD3d at 1074 [internal quotation marks, brackets and citations omitted]).
Garry, P.J., Ceresia, Powers and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: We note that, because her parental rights to the mother were terminated, Candy II. no longer enjoys standing as a grandparent (see Matter of Clarabelle K. v Christman, 225 AD2d 951, 952-953 [3d Dept 1996], lv dismissed 88 NY2d 959 [1996]; Matter of Catherine JJ. v Charlotte II., 216 AD2d 752, 753 [3d Dept 1995]).