Matter of Tamara GG. v Danielle HH. (2025 NY Slip Op 02635)

Matter of Tamara GG. v Danielle HH.

2025 NY Slip Op 02635

Decided on May 1, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 1, 2025

CV-24-0163
[*1]In the Matter of Tamara GG. et al., Respondents,
v
Danielle HH., Appellant.

Calendar Date:March 27, 2025

Before:Garry, P.J., Egan Jr., Reynolds Fitzgerald, McShan and Mackey, JJ.

Christopher Hammond, Cooperstown, for appellant.
Lisa K. Miller, McGraw, for respondents.
Larisa Obolensky, Bovina Center, attorney for the child.

Egan Jr., J.
Appeal from an order of the Family Court of Delaware County (Gary Rosa, J.), entered January 8, 2024, which granted petitioners' application, in a proceeding pursuant to Family Ct Act article 6, for custody of respondent's child.
Respondent (hereinafter the mother) is the mother of the subject child (born in 2011). Petitioner Tamara GG. (hereinafter the aunt) is the child's paternal aunt, while petitioner Bernard GG. (hereinafter the grandfather) is his paternal grandfather. Pursuant to a 2018 order entered upon consent, the child's father was awarded sole legal and physical custody of the child and the mother was awarded supervised visitation to commence upon her release from prison. The mother was released in December 2021. After the father died in August 2022, petitioners commenced the instant proceeding seeking custody of the child, alleging that the child wanted to live with them and that there were serious concerns about the mother's suitability as a custodian due to her mental instability. Family Court issued a temporary order awarding them sole custody while maintaining supervised visitation for the mother as set out in the 2018 order, and the matter proceeded to a fact-finding hearing which began in April 2023.
Following an apparent mental health crisis in November 2023 that ended with the mother being detained by the police and hospitalized, the attorney for the child moved for an order suspending the mother's visitation and directing her to stay away from the child. Family Court temporarily suspended supervised visitation pending the outcome of that motion. After Family Court denied the mother's request to adjourn the final trial date, the fact-finding hearing reached its conclusion in December 2023 and Family Court conducted a Lincoln hearing with the child in January 2024. Family Court thereafter issued an order in which it awarded petitioners joint legal and physical custody of the child. The court further addressed the attorney for the child's motion by suspending the mother's parenting time and directing her to stay away from the child's home, school and extracurricular activities without prejudice to revisiting those issues once she had made progress in addressing her mental health challenges. The mother appeals.
We affirm. "A parent has a claim of custody to his or her child that is superior to all other persons, unless a nonparent establishes that there has been surrender, abandonment, persistent neglect, unfitness, an extended disruption of custody or other like extraordinary circumstances" (Matter of Jared MM. v Mark KK., 205 AD3d 1084, 1086-1087 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Candy II. v Kandice HH.,___AD3d ___, ___ 2025 NY Slip Op 01411, *2 [3d Dept 2025]; Matter of Michael P. v Joyce Q., 191 AD3d 1199, 1200 [3d Dept 2021], lv denied 37 NY3d 901 [2021]). Here, the testimony and documentary evidence presented by petitioners reflected that the mother had unaddressed, longstanding [*2]mental health issues that rendered her a threat to herself and others.[FN1] By way of example, there was testimony reflecting that the mother acknowledged while she was incarcerated that she had a plan to kill her parents and other relatives before killing herself, and several people who knew the mother, including the maternal grandmother, testified that they believed that the mother was fully capable of harming herself and others and were, in fact, afraid of her. The testimony of a police officer, backed by police reports, further indicated that the mother was taken into custody and brought to a hospital for psychiatric assessment in November 2023. The officer testified that, on November 7, 2023, she responded to a report of a possible burglary to find the mother removing siding from a stranger's house and crawling under it to do "cleaning," then responded to a call later that day to find the mother at her home, nonverbal and with apparently self-inflicted burns to her face and hair, all of which led the officer to detain the mother as someone mentally ill and behaving in a manner "likely to result in serious harm to [herself] or others" (Mental Hygiene Law § 9.41 [a]). No evidence was presented to suggest that the mother was dealing with these mental health issues in any way. Family Court properly determined that these serious and untreated mental health issues put the mother and anyone in her care at risk and were "sufficient to establish the extraordinary circumstances required to divest the mother of custody" (Matter of Evelyn EE. v Ayesha FF., 143 AD3d 1120, 1125 [3d Dept 2016], lv denied 28 NY3d 913 [2017]; see Matter of Renee TT. v Britney UU., 133 AD3d 1101, 1103-1104 [3d Dept 2015]; Matter of Darrow v Darrow, 106 AD3d 1388, 1391-1392 [3d Dept 2013]).
As petitioners satisfied their burden of establishing extraordinary circumstances, the question turned to what custodial arrangement would be in "the child's best interests, and relevant factors in that analysis include maintaining stability in the child's life, the quality of the respective home environments, the length of time the present custody arrangement has been in place and each party's past performance, relative fitness and ability to provide for and guide the child's intellectual and emotional development" (Matter of Jared MM. v Mark KK., 205 AD3d at 1087 [internal quotation marks and citations omitted]; accord Matter of Candy II. v Kandice HH., ___ AD3d at ___, 2025 NY Slip Op 01411, at *2). Without belaboring the point, the hearing testimony left no question that petitioners have been close to the child throughout his life and have cared for him well since he, at his own request, began living with them at their respective residences after the death of his father. The mother, in contrast, has only been intermittently involved with the child and would be an unsafe custodian given her unaddressed mental health issues. A sound and substantial basis in the record accordingly exists for Family [*3]Court's determination that that the best interests of the child will be furthered by awarding petitioners custody (see Matter of Autumn B. v Jasmine A., 220 AD3d 1073, 1075-1076 [3d Dept 2023], lv denied 41 NY3d 901 [2024]).
As for Family Court's denial of visitation, "[a]lthough parenting time with a noncustodial parent is presumed to be in a child's best interests, that presumption may be overcome where the party opposing visitation sets forth compelling reasons and substantial evidence that such visitation would be detrimental or harmful to the child's welfare" (Matter of Gabrielle Q. v James R., 233 AD3d 1407, 1408 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of William Z. v Kimberly Z., 212 AD3d 1036, 11038-1039 [3d Dept 2023]). Here, there was undisputed testimony that the mother engaged in inappropriate and unwelcome conversations with the child about his father's death during their supervised visits and had engaged in inappropriate and embarrassing conduct around him at public events, such as telling petitioners that they had "killed [the father] and now [were] killing [the child]" after the child sprained his finger at a basketball game in December 2022. All of this, unsurprisingly, made the child uncomfortable around her, and it is worth noting that he never asked petitioners to arrange any visits when the mother unilaterally ended them between January 2023 and July 2023. Although not determinative, we also note that the attorney for the child opposes visitation (see Matter of Angela H. v St. Lawrence County Dept. of Social Servs., 180 AD3d 1143, 1149 [3d Dept 2020]). Thus, "[g]iving deference to Family Court's factual and credibility determinations, and considering the transcript of the Lincoln hearing, we find that Family Court's denial of visitation to the mother is supported by a sound and substantial basis in the record" (id.; see Matter of Gabrielle Q. v James R., 233 AD3d at 1409-1410).
The mother finally contends that Family Court abused its discretion in declining to adjourn the last day of the fact-finding hearing and directing her counsel to proceed without her present. "The grant or denial of a motion for an adjournment for any purpose is a matter resting within the sound discretion of the trial court" (Matter of Steven B., 6 NY3d 888, 889 [2006] [internal quotation marks and citations omitted]; see Matter of Jessica HH. v Sean HH., 196 AD3d 750, 751-752 [3d Dept 2021]). The mother's sole basis for an adjournment was a purported "flood[ ]" in her apartment that required her to wait for her landlord to make repairs. Even her own counsel acknowledged, however, that the photographs of the supposed flood sent by the mother only showed the "aftermath" of a leak where "the water [had already been] taken care of and mopped up." Family Court denied the request, noting that the leak depicted in the photographs was not the "flood" claimed by the mother and stressing that the child deserved closure in a [*4]custody dispute that had, by that point, been going on for 16 months. In view of the lack of evidence to demonstrate that an actual emergency existed — and, indeed, the presence of photographs suggesting that one did not — and the fact that counsel for the mother was present and "actively and diligently participated in the hearing in the mother's absence," Family Court properly did so (Matter of Jessica HH. v Sean HH., 196 AD3d at 752; see Matter of Dench-Layton v Dench-Layton, 151 AD3d 1199, 1200 [3d Dept 2017]; Matter of Aida B. v Alfredo C., 114 AD3d 1046, 1047-1048 [3d Dept 2014]).
Garry, P.J., Reynolds Fitzgerald, McShan and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The mother's arguments that Family Court erred in relying upon hearsay evidence and the police reports regarding her mental health struggles were not raised at the hearing and are therefore unpreserved for our review (see Matter of Paul CC. v Nicole DD., 151 AD3d 1235, 1237 [3d Dept 2017]).